**STATE of Tennessee, Appellee,**

v.

**William Douglas BROWN, Sr., Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 3, 1983.

Permission to Appeal Denied by Supreme Court Jan. 30, 1984.

A.C. Wharton, Jr., Shelby Co. Public Defender, Walker Gwinn, Asst. Public Defender, Thomas Pera, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Raymond S. Leathers, Asst. Atty. Gen., Nashville, S.T. Bruce, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, William Douglas Brown, Sr., was convicted of second degree murder and sentenced to the State penitentiary for a term of 18 years. On this appeal, he says that the evidence was not sufficient to support the verdict and that the trial court erroneously allowed evidence that the defendant admitted to the police that he shot the deceased. We find no merit in the issues presented and affirm the judgment of conviction.

We first address the issue attacking the sufficiency of the evidence. Annie Mae Britt testified that on the afternoon of April 18, 1982, she was in her apartment with Diane Williams and Diane Thomas. Her apartment is second door from that of the defendant. About 2:30 or 3:00 P.M., the defendant and the victim, Robert Wallace, Sr., invited the three women to the defendant's porch to drink rum with them. The women accepted the invitation and drank rum with the two men for approximately 30 minutes on the defendant's porch. The defendant kept telling Wallace that he was going to kill him because he (Wallace) had been "fooling around with my old lady." Wallace insisted that the defendant had no reason to kill him. The defendant went into his house and got a pistol, came back on the porch and while standing with his hands on the pistol, which was in his pocket, he told the ladies they had better leave because he was "fixing" to kill Wallace. The men friends of the three women came and as the women and their friends were leaving, she saw the defendant shoot Wallace with the pistol. She was about six feet away when this occurred. When Wallace was shot, he fell across the banister off the porch and onto the ground. The witness and her companions ran to the witness's apartment and heard another shot after they arrived. The witness then saw the defendant walk toward a cafe with the pistol in his hand. After the police arrived, the defendant returned to the scene without the pistol. The witness heard the defendant tell police that he shot Wallace and that if Wallace wasn't dead, he was going to shoot Wallace again.

Ms. Britt's testimony was corroborated by that of Diane Williams and Diane Thomas.

The evidence reflected that Wallace was not armed and was docile with the defendant. An autopsy indicated that he was shot

two times. The fatal wound entered the top left of his head and passed through his brain. He was also shot in the lower back and this bullet lacerated his spinal cord. His blood contained .25 per cent alcohol. In addition to the testimony of the three women, police officers testified that the defendant admitted shooting the victim.

The defendant testified in his own behalf but offered no other evidence. His testimony was that he was making his bed in his apartment when the victim approached him and told him that he was aggravating things and interfering with his personal affairs and that he was going to "fix" the defendant. The defendant looked up and saw Wallace going into his bosom or jacket and thought that he was going to grab a weapon. He assumed that the victim was carrying a .32 caliber pistol because the victim had told him previously that he carried one. The defendant then pulled his pistol and shot the victim twice when the victim attempted to straighten up and turn towards him. The defendant knew "good and well" that he hit the victim twice. After being shot, the victim walked out the door and caught a post. The victim "broke again to go in his bosom again" and the defendant shot him a third time. When shot the third time, the victim "eased on down" to the ground. The defendant testified that he "didn't want to get involved in no more participation" so he "went on up there so I could see the police and tell them that I was the one. I was the one."

The defendant insisted that the women left his porch before Wallace arrived and that no one was present at or near the scene when the shooting took place but him and Wallace.

All conflicts in the evidence were resolved by the jury. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). We find abundant evidence upon which a rational trier of fact could be convinced beyond a reasonable doubt of the defendant's guilt of second degree murder. We must therefore overrule the issue attacking the sufficiency of the evidence. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); T.R.A.P. Rule 13(e).

The defendant next complains that inculpatory statements made by the defendant were admitted in evidence. The statements are that at the scene, when the defendant was arrested, he continuously hollered that if the victim was not dead, he was going to kill him.

At the suppression hearing, Officer R.M. Betts of the Memphis Police Department testified that he and Officer Cook arrested the defendant. Officer Betts testified that he advised the defendant of his rights when he put handcuffs on the defendant. There was no previous conversation with him. As the defendant was being put in the patrol car, one of the officers asked him where the gun was and he said that he threw the gun into a field. The gun was never found. Officer Betts did not recall any other statements made by the defendant at the time of his arrest.

Officer S.H. Cook testified that the defendant was told to put his hands up and was advised of his rights at that time. The defendant put his hands up, and he was handcuffed. Officer Cook recalled that when the defendant was told to put his hands up, he asked if the victim was dead, saying that if he was not dead, then he (the defendant) would shoot him again. The defendant kept hollering this over and over at the scene. It is noted that some of the other witnesses heard the defendant make this statement.

The record leaves no doubt other than that the statements of the defendant to the effect that if the victim was not dead, then the defendant would kill him, were volunteered spontaneous statements. They are admissible in evidence whether or not *Miranda* warnings were first given. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Fox v. State,* 1 Tenn.Cr. App. 308, 441 S.W.2d 491, 499 (1969). In this connection, we note that the defendant testified that he was searching for police officers to tell them that he did the shooting.

The defendant also states that he was too intoxicated to voluntarily make a statement. While there is evidence of the defendant's intoxication, there is none to support his contention that he was incapable of volunteering a statement. The fact that he did volunteer the statement, is conclusive evidence that he was not too intoxicated to do so. The United States Supreme Court in the *Miranda* case observed:

> "Volunteered statements *of any kind* are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis supplied)

We interpret this and other language in the *Miranda* case to mean that a volunteered, spontaneous statement made by an accused is admissible in evidence whether or not the accused understands his constitutional rights or the possible consequences of making such a statement.

Finding no error, we affirm the judgment of the court below.

WALKER, P.J., and FAQUIN, J., concur.