IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1997 SESSION

FILED

January 30, 1998

Cecil W. Crowson
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| | ) C.C.A. No. 01C01-9611-CC-00488 |
| Appellee, | ) |
| | ) Montgomery County |
| V. | ) |
| | ) Honorable John H. Gasaway, Judge |
| MARCUS A. VELEZ, | ) |
| | ) (First Degree Murder) |
| Appellant. | ) |
| | ) |

FOR THE APPELLANT:

Michael R. Jones
District Public Defender
110 Sixth Avenue, West
Springfield, TN 37172

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Daryl J. Brand
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

John Wesley Carney, Jr.
District Attorney General

Steven L. Garrett
Helen O. Young
Assistant District Attorneys General
204 Franklin Street, Suite 200
Clarksville, TN 37040

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The appellant, Marcus A. Velez, was convicted by a jury of first degree murder. Montgomery County Circuit Court Judge John H. Gasaway sentenced the appellant to life in prison. On appeal, the appellant presents five issues for our review:

1. Whether the evidence of premeditation and deliberation is sufficient to support the jury's verdict.

2. Whether the trial court erred in admitting photographs of the victim's body.

3. Whether the judge improperly instructed the jury on the punishment for first degree murder.

4. Whether the trial court erred in admitting the appellant's statements into evidence.

5. Whether the trial court erred in permitting the state to question witness Michael Bowers about his plea agreement with the state.

After carefully reviewing the record before us, we affirm the appellant's conviction.

On Saturday morning, March 4, 1995, the appellant, seventeen-year-old Marcus Velez; sixteen-year-old Mike Bowers; a fourteen-year-old friend of the appellant whom we will refer to as "the minor;" and the victim, eighteen year-old Kenneth Battisti, drove to the Bowers' family farm outside of Clarksville. Upon arrival, the appellant shot the victim twice in the back. Both Bowers and appellant were charged. Bowers entered into a plea agreement with the state. The appellant went to trial for first degree murder.

The evidence revealed that Bowers and the minor were good friends of the appellant. The appellant had been a friend of the victim. All the boys were involved in a martial arts club at a local recreation center. The appellant and the victim had a falling out of some sort. The victim made disparaging remarks about the appellant's martial arts ability and criticized the appellant for the way

he treated his mother.  The appellant told Bowers and the minor that he was going to kill the victim and bury the body.  The minor testified that the appellant made up a story to lure the victim to the Bowers' farm and kill him.  The appellant told the victim that he could make some money for helping out at the Bowers' farm Saturday morning.

On Friday, March 3, the appellant and the minor went to Bowers' house and took a rifle and ammunition to target practice.  Bowers later joined them.  The minor testified that while shooting at some boards, the appellant stated that the bullets would go straight through the victim just as they went straight through the wood.  Later that day, the appellant and the minor went to Buddy Newman's house where the appellant stated that he was tired of the victim's "bullshit" and that he, the appellant, was going to take care of it.  The appellant told Bowers and the minor that the victim did not deserve to live.

The appellant took the minor home and Bowers spent the night with the appellant.  The next morning, the appellant and Bowers picked up the minor and the three went to the recreation center for a scheduled sparring match.  When no one showed, the appellant drove to Newman's house looking for the victim.  Newman said that the victim was at Josh Carrier's house.  The appellant went to Josh's house and told Josh and Jamie Donegan that he needed the victim to work on the farm.

The appellant, Bowers, the minor, and the victim drove to the Bowers' farm  in the appellant's car.  The appellant had Bowers' rifle and ammunition.  When they arrived, the appellant told the minor and Bowers to get out of the car.  The appellant and the victim drove several hundred yards into the farm property and got out of the car.  The appellant shot the rifle at a tree.  Upon hearing the shot, Bowers and the minor began running toward the appellant.  When they saw the victim standing, they slowed to a walk.  The appellant then shot  the victim in

the back.  Bowers and the minor ran to the scene where they found the victim wheezing and groaning on the ground.  The minor testified that the appellant then asked, "Do you want me to shoot him one more time for good luck?"  The appellant shot the victim again in the back.

The appellant laid some brush over the victim, and the three went to the appellant's grandfather's house to get tools to bury the victim.  They returned to the farm and buried the victim in a shallow grave.  Some of the residents in an adjoining field watched the boys through binoculars.  The boys returned the tools, the rifle, and the ammunition.  Later, the appellant told his mother and Josh Carrier that he had taken the victim to the airport because the victim had personal problems and wanted to run away from home.

In his first issue, the appellant argues that the evidence of premeditation and deliberation is insufficient to support the jury's verdict.  When an appellant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e); State v. Duncan, 698 S.W.2d 63 (Tenn. 1985).  The weight and credibility of a witness' testimony are matters entrusted exclusively to the jury as the triers of fact.  State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978).  On appeal, the state is entitled to both the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978).  Moreover, guilty verdicts remove the presumption of innocence, enjoyed by defendants at trial, and replace it with a presumption of guilt.  State v. Grace, 493 S.W.2d 474 (Tenn. 1973).  Appellants, therefore, carry the burden of overcoming a presumption of guilt when appealing jury convictions.  Id.

A jury found the appellant guilty of murder in the first degree, which at that time was defined as "[a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202 (Supp. 1994). A premeditated act is "one done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(2) (1991). A deliberate act is "one performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1). Several factors which can support the findings of premeditation and deliberation include the use of a deadly weapon on an unarmed victim, declarations of a defendant of an intent to kill, evidence of the procurement of a weapon, preparations for the concealment of the crime, and calmness immediately after the killing. State v. Bland, No. 02-S01-9603-CR-00032 (Tennessee Supreme Court at Jackson, filed December 1, 1997).

The appellant cites to evidence that the shooting occurred during a state of passion which, he argues, proves the lack of premeditation and deliberation. Bowers testified that the appellant and the victim were extremely angry and that they may have been fighting. Bowers also testified that the appellant was acting very weird and unlike his normal self. The appellant cites to his own statement in which he described himself as very angry and described the shooting as "just then, I shot him."

The evidence is sufficient to support the jury verdict of first degree murder. The evidence of premeditation and deliberate is substantial. The appellant made statements before the murder that he was going to kill the victim. He devised a plan to lure the victim to the Bowers' farm. He went target shooting. He shot an unarmed victim twice in the back. He calmly buried the victim in a businesslike fashion and then fabricated a story to cover up the crime. Statements of intent to kill are evidence of premeditation as are statements such as "I am going to bury the body where no one will find it" and "Do you want me to shoot him one more time for good luck?"

The appellant next argues that the trial court erred in admitting photographs of the victim's body. He contends that the only issue on which these photos could have been probative was whether the killing was premeditated and deliberate. The appellant argues that the prejudicial effect of the photos exceeded their probative value because other evidence established that the appellant shot the victim twice in the back. Over the objection of the appellant, the trial court admitted two photographs of the victim through the testimony of the medical examiner, Dr. Charles Harlan. The trial court ruled that the photos were probative and corroborative of Dr. Harlan's testimony that the victim died of gunshot wounds. The photographs show the bullet entry wounds to the victim's back and the bullet exit wounds to the victim's chest.

Whether to admit photographs is within the sound discretion of the trial court and will not be reversed on appeal absent a clear showing of an abuse of discretion. State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996); State v. Evans, 838 S.W.2d 185, 194 (Tenn. 1992); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). To be admissible, the photograph must be relevant and probative to some issue at trial. Tenn. R. Evid. 401; McCary, 922 S.W.2d at 515. Even if relevant, the photograph may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tenn R. Evid. 403; McCary, 922 S.W.2d at 515.

The manner in which the victim was killed is relevant to the issues of premeditation and deliberation. Banks, 564 S.W.2d at 949-50. The appellant contended at trial that the killing was of a lesser degree than murder. Photographs showing that the victim was shot twice in the back are relevant and probative evidence of premeditation and deliberation. Further, as asserted by the state and found by the trial court, the photos are illustrative aids to Dr. Harlan's testimony. The probative value of the photographs, taking into consideration other evidence that the victim was shot twice in the back, is not

substantially outweighed by any prejudicial effect that they may have had on the jury. The photographs are not gruesome or shocking as suggested by the appellant. The body was not in an altered condition. The photographs show only the victim's back and chest. The photos do not show the victim's head and show very little, if any, blood around the victim's wounds. We find no reversible error regarding the trial court's decision to admit the photographs into evidence.

The appellant next argues that the judge improperly instructed the jury on the punishment for first degree murder. The appellant argues that the trial court should have instructed the jury that if the appellant was sentenced to life imprisonment that he would serve a minimum of twenty-five years in prison before being eligible for parole consideration. Tennessee Code Annotated §§ 39-13-204(e)(2) & -207(a) (Supp. 1995) provide in relevant part that in a first degree murder case in which the state seeks the punishment of death or life without the possibility of parole, the trial court must instruct the jury that a defendant who is sentenced to life imprisonment shall not be eligible for parole until the defendant has served twenty-five full calendar years of such sentence. In the case at bar, the state did not file a notice of intent to seek the death penalty or life without the possibility of parole. Therefore, the court was not required under these sections to so instruct the jury. When no such notice is filed and the defendant is found guilty of first degree murder, the court imposes the sentence of life imprisonment. Tenn. Code Ann. § 39-13-208(c) (Supp. 1995).

The appellant also cites Tennessee Code Annotated § 40-35-201(b)(1) (Supp. 1995) which provides: "[i]n all contested criminal cases, except for capital crimes which are governed by the procedures contained in 39-13-204 and 39-13-205, upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses." As the state points out, the appellant never filed a

motion requesting the court to instruct the jury on applicable penalties for first degree murder and all lesser included offenses. Therefore, the trial court was not required by this section to instruct the jury. This issue is without merit.

The trial court's instruction to the jury on the applicable penalties benefits the appellant. The court instructed the jury that the punishment for first degree murder was life imprisonment; for second degree murder, not less than fifteen years and not more than sixty years incarceration; and for voluntary manslaughter, not less than three years and not more than fifteen years incarceration. In State v. Cook, 816 S.W.2d 322 (Tenn. 1991), our Supreme Court observed that the jury's knowledge of how lengthy a sentence generally inures to the benefit of the defendant. Here, the jury was most likely left with the impression that the defendant would never be eligible for parole if convicted of first degree murder. It seems to this Court that the jury would have considered the sentence for first degree murder, life imprisonment, as a much harsher sentence than if the judge had informed the jury that the appellant would be eligible for parole in twenty-five years.

The appellant next argues that the trial court erred in admitting his statements into evidence. The appellant made statements at the time of his arrest and gave a videotaped statement approximately one hour later. The appellant filed a motion to suppress his statements as involuntary because he was not informed of his constitutional rights. At the suppression hearing, the trial court found that the appellant's statements at the time of his arrest were spontaneous and not the result of questioning by the police. The court further found that the appellant was fully advised of his constitutional rights before giving the videotaped statement and that he made a knowing and intelligent waiver of his rights.

A trial judge's factual findings on a motion to suppress must be affirmed

on appeal unless the evidence preponderates otherwise. State v. Tuttle, 914 S.W.2d 926, 931 (Tenn. Crim. App. 1995). The credibility of witnesses is for the judge as trier of fact. Id. The evidence at the suppression hearing consisted primarily of the testimony of the arresting officer Detective Cliff Smith and the appellant. Detective Smith testified that he arrested the appellant for murder at approximately 9 p.m. on Sunday night. Detective Smith testified that he advised the appellant that he had the right to remain silent, that he had the right to an attorney, and that if he could not afford an attorney that one would be appointed to him. Detective Smith failed to inform the appellant that anything that the appellant said could be used against him at trial. Detective Smith testified that thereafter the appellant stated that he had "the gun." Smith asked, "You have the gun?" The appellant replied, "No, Joey has the gun." When the appellant's roommate started to call Joey, the appellant told her to stop calling because Joey did not have the gun. The appellant then said that he did not want to talk anymore. Detective Smith testified that at that point he stopped all questioning. Several moments later, the appellant told Detective Smith, "I want to talk to you." Detective Smith thought that the appellant meant that he wanted to talk to the detective out of the presence of the other officers so he moved the appellant down the hallway. Detective Smith told the appellant that he would do what he could do to help him. The appellant said that he shot the victim because the victim had said certain things about the appellant. The appellant testified that Detective Smith read him his rights and then immediately asked where is the gun. The appellant testified that Detective Smith then said, "We can help you, let us help you." The appellant testified that it was only then that he asked the Detective Smith if he could talk to him. Shortly thereafter the appellant was taken to the criminal justice center where he was read his rights and where he signed the standard admonition and waiver form. The appellant stated on the videotape that he understood his rights and that he wished to waive them. At approximately 9:48 p.m. the appellant gave a videotaped statement.

In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court formulated warnings that must be given to a suspect before the commencement of custodial interrogation. Miranda requires law enforcement officers to warn suspects that they have the right to remain silent; that anything said can and will be used against them in court; that they have the right to consult with a lawyer and to have the lawyer with them during interrogation; and that if they cannot afford one, then one will be appointed. The need for Miranda warnings, however, is limited to custodial interrogations. Any statement given voluntarily without any compelling influences is admissible in evidence whether or not Miranda warnings are given first. State v. Brown, 664 S.W.2d 318, 320 (Tenn. Crim. App. 1984). The fundamental import of the privilege while an individual is in custody is not whether he or she is allowed to talk to the police without the benefit of warnings and counsel, but whether he or she can be interrogated. Miranda, 384 U.S. at 478. Volunteered statements of any kind are not barred by the Fifth Amendment. Id.; see also State v. Goodman, No. 01C01-9512-CC-00423 (Tenn. Crim. App. at Nashville, filed March 13, 1997); State v. Chambless, 682 S.W.2d 227 (Tenn. Crim. App. 1984);

We find no merit to this issue. The trial court's duty was to assess the credibility of the appellant and Detective Smith at the suppression hearing. The judge accredited the testimony of Smith. The appellant's statements were not elicited through custodial interrogation but rather were voluntary. Thus, Detective Smith's failure to advise the appellant at the time of the arrest that anything said could be used against him in court was not fatal to the admission of the statements because the statements were voluntary. Furthermore, the appellant was fully advised of his constitutional rights before giving his videotaped statement. The appellant stated on the video that he was informed of and understood his constitutional rights. The appellant signed a waiver of rights form voluntarily waiving his rights before he was interrogated by Detective Smith.

Finally, the appellant argues that the trial court erred in permitting the state to question witness Michael Bowers about his plea agreement. Bowers agreed to testify truthfully in exchange for the state's recommendation that the court accept his plea of guilty to facilitation of first degree murder. The appellant argued in the trial court that this testimony was prejudicial because it suggested a predetermination of first degree murder. The appellant argued that the testimony violated the jury's duty to determine the degree of murder committed. The trial court shared the appellant's concern but held that the terms of the agreement were admissible because the plea agreement was not an adjudication but rather a suggestion to the court. At trial, the state elicited testimony that Bowers had been charged with first degree murder and that, in exchange for his truthful testimony, the state would allow him to plead guilty to facilitation of first degree murder. The court quickly corrected the state, saying that the plea agreement was a recommendation to the court. The state further clarified this for the jury saying that the state had agreed to the plea agreement, subject to the court's approval. Bowers' agreement with the state was relevant to the issue of Bowers' credibility. The risk of unfair prejudice to the appellant did not substantially outweigh the probative value of Bowers' testimony. This issue is without merit.

CONCLUSION

After careful consideration of the issues presented by the appellant, we affirm his conviction of first degree murder.

_____
PAUL G. SUMMERS, Judge

CONCUR:

-11-

_____
JOSEPH B. JONES, Presiding Judge


-12-


_____
WILLIAM M. BARKER, Judge