IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2000

## STATE OF TENNESSEE v. JAMES E. MATHIS

**Appeal from the  Circuit Court for Williamson County**
**No. II-1098-328-C     Timothy L. Easter, Judge**

―――――――――

**No. M2000-00316-CCA-R3-CD - Filed November 9, 2000**

―――――――――

Defendant James E. Mathis was convicted by a Williamson County jury of possession of contraband in a penal institution and sentenced to eight (8) years incarceration in the Department of Correction. In this appeal as of right Defendant raises one issue for appellate review: whether the trial court erred when it refused to suppress incriminating statements made by Defendant to the corrections officers. Defendant contends that his conviction must be reversed and a new trial ordered. After a review of the entire record and applicable law we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES, J., and NORMA MCGEE OGLE, J., joined.

M. Wallace Coleman, Jr., Lawrenceburg, Tennessee, for the appellant, James E. Mathis.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant James E. Mathis was convicted by a Williamson County jury of possession of contraband in a penal institution, Tenn. Code Ann. § 39-16-201, and sentenced to eight (8) years incarceration in the Department of Correction. In this appeal as of right Defendant raises one issue for our review: whether the trial court erred when it denied Defendant's motion to suppress incriminating statements made by Defendant to the corrections officers. Defendant contends that his conviction must be reversed and a new trial ordered. After a review of the entire record and applicable law we find no reversible error and affirm the judgment of the trial court.

Before turning to Defendant's issue on the merits we address several deficiencies in Defense counsel's preparation of this matter. There is no motion for new trial filed in the record. The record

of proceedings in this case is on audio-visual tapes and not in written transcripts. In his brief, Defendant claims that his counsel made an oral motion for a new trial at the conclusion of his trial. Unfortunately, Defendant's brief does not include a citation to the video record regarding the motion. In fact, there are no time-specific citations in Defendant's entire brief. Although we have viewed the audio-visual tapes of the motion to suppress, the trial, and the sentencing hearing, we are unable to locate any hearing on a motion for new trial. Even if Defense counsel did make an oral motion for a new trial, he did not reduce the oral motion to writing within thirty days as required by Tennessee Rule of Criminal Procedure 33(b). Hence, there is no record, oral or written, of a motion for new trial in Defendant's case.

Ordinarily, a party's failure to provide citations to the record in a brief, as required by Tennessee Rule of Appellate Procedure 27(g), results in waiver of the issue before this Court. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). Equally important regarding evidentiary issues, failure to make a motion for a new trial within thirty (30) days of judgment, as well as failure to reduce an oral motion for a new trial to writing within thirty (30) days, customarily results in a waiver of the defendant's right to argue the issue on appeal. Tenn.R.App.P. 3(e); Tenn.R.Crim.P. 33(b); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980). Nevertheless, we elect to address Defendant's issue on the merits.

## FACTS

Officer Thomas Justus, Captain John Jordan, and Defendant testified at the suppression hearing. Officer Justus, a corrections officer at the John I. Easley Criminal Justice Center in Williamson County, testified that he was on duty September 11, 1998 when the incident involving Defendant occurred. Justus testified that when he entered the "364" dormitory–a large room that houses several inmates–he observed three inmates quickly exit a freestanding shower located in the corner of the room. The rapid departure made Justus suspicious, so he investigated. Approaching the shower he smelled marijuana. When Justus pulled the shower curtain back, approximately eight or nine marijuana cigarettes fell from the space between the shower curtain and the rod onto the floor. Justus confiscated the marijuana, then he and another officer found and detained the three inmates who had run off. Defendant was among them.

Justus testified that he brought one of the three inmates immediately to the supervisor's office for questioning; he does not remember who was first. Shortly thereafter, the remaining two were also questioned. In addition to Justus, the officers present during questioning were shift supervisor Sergeant McCullough and Corrections Officer Weathers. The focus of their questions concerned ownership of the marijuana. Justus testified that, although all three inmates admitted to smoking marijuana in the shower before Justus arrived, each denied ownership of the marijuana as well as any knowledge regarding the hidden cigarettes. (At trial, Justus testified that he did not remember whether Defendant stated that he was "smoking *marijuana*" or merely "smoking.") Justus testified that neither he nor the other officers read the inmates Miranda warnings before they questioned them, but that all statements were voluntary. Justus testified further that the questioning took place in a "regular office" with glass windows, and the doors were unlocked.

Captain John Jordan, supervisor of the Easley Criminal Justice Center, testified at the suppression hearing that he arrived at the Center in the evening hours of September 11, 1998. At that time, Jordan learned that marijuana had been confiscated. Jordan was also informed that the three inmates involved had been questioned and that one of them, Michael Taylor, wanted to speak with him regarding the incident. Jordan first talked to Taylor. Later, Defendant also came to Jordan's office to speak with him. Detective Hagen was present when Defendant arrived. Jordan testified that before his interview with Defendant, Hagen read Defendant his <u>Miranda</u> rights from a card provided by Jordan. Defendant understood his rights. Jordan said that Defendant admitted he had been smoking marijuana with the other inmates but denied ownership of the contraband. Jordan testified that Defendant did not ask for an attorney or request to leave his office at any time during their discussion. Furthermore, neither inmate's presence in the office was mandatory and the statements were voluntary.

At the suppression hearing, Defendant testified that he admitted to Officer Justus he had been smoking marijuana. Defendant said that later that same evening, Defendant was summoned by a corrections officer to speak with Captain Jordan and Detective Hagen in Jordan's office. Defendant stated that he was not Mirandized before he was questioned by them and, in fact, that he had never been read <u>Miranda</u> warnings during his incarceration at the Center. Defendant testified that Jordan asked him whether he wanted to "tell them what was going on," and Defendant responded, "not really." Jordan claimed to already possess a statement from Defendant in which Defendant admitted his guilt. Defendant claimed that he made no statements to Jordan except to confirm Jordan's statements to him regarding the identity of the person responsible for bringing contraband into the Center by responding, "you're good." Defendant testified that he denied ownership of the marijuana at all times but that the statements he did make were voluntary and uncoerced.

From the facts presented at the suppression hearing, the trial court determined that the Defendant was read his <u>Miranda</u> warnings by Detective Hagan and in the presence of Captain Jordan before being questioned by either of them. The trial court further found that Defendant understood the warnings and subsequently waived them before making any statements. For purposes of analyzing his first statements to Officer Justus under <u>Miranda</u>, the trial court decided that Defendant was not "in custody" when he made his statements to Justus immediately following the discovery of marijuana in the shower: neither the language used by Justus to summon Defendant to the supervisor's office, the Defendant's physical surroundings during interrogation, nor the extent to which Defendant was confronted with evidence of his guilt rendered Defendant "in custody" for <u>Miranda</u> purposes. Lastly, the trial court found that there was no additional imposition on Defendant's freedom of movement when questioned by Justus.

## ANALYSIS

Defendant contends that the trial court erred when it admitted into evidence his statements to Officer Justus and Captain Jordan to the effect that he was smoking marijuana. He asserts that he was "in custody" for <u>Miranda</u> purposes and that the incriminating statements to Justus should have been suppressed because they were made before Miranda warnings were given. Defendant

denies making any statement to Jordan but if a statement is nevertheless found to have been made, Defendant argues that it was tainted and, therefore, inadmissible as a confession subsequent to an illegally obtained statement.

The Fifth Amendment to the United States Constitution provides in part that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. The Supreme Court has held that the protections afforded by the Fifth Amendment require that precautions be taken before statements obtained through custodial interrogation are allowed as evidence against an accused. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1964). Generally, when statements made by an accused are the product of a custodial interrogation by law enforcement officers, the statements may not be admitted into evidence unless the accused is

> warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Id. Only when the suspect is informed of his rights via the "Miranda" warnings may a suspect be deemed to knowingly and intelligently waive the right to remain silent and the right to an attorney. Id. Moreover, any statement obtained after a waiver of this right must be voluntary, and not be extracted by "any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

Miranda warnings are required only when a person is subject to custodial interrogation by law enforcement. "Custodial" means that the subject of questioning is in "custody or otherwise deprived of his freedom by the authorities in any significant way." Miranda, 384 U.S. at 479, 86 S.Ct. at 1630. "Interrogation" has been interpreted to refer to questions that law enforcement officers should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). In order for Miranda to apply, the suspect's statements must be in response to interrogation by law enforcement personnel. See State v. Brown, 664 S.W.2d 318, 321 (Tenn. Crim. App. 1983). Moreover, the suspect must also know that he is being interrogated by an agent of the State. See Illinois v. Perkins, 496 U.S. 292, 296-97, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990).

These standards are modified, however, when the suspect subjected to questioning is already in custody because he is incarcerated. In Tennessee, the standard to determine whether Miranda warnings must precede questioning in a prison setting were set out in State v. Goss, 995 S.W.2d 617, 629 (Tenn. Crim. App. 1998). In Goss, this Court held that a prisoner is not automatically "in custody" within the meaning of Miranda; there must be an additional imposition on the inmate's

freedom of movement.  Id.  Relevant to this determination is (1) the language used to summon the inmate, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure exerted to detain the inmate.  Id.

This Court must uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates against them.  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  In evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial.  State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).  The burden is on the defendant to demonstrate that the evidence preponderates against the trial court's findings.  State v. Harts, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.  Odom, 928 S.W.2d at 23.  The application of the law to the facts, however, is a question of law which is reviewed de novo on appeal.  Harts, 7 S.W.3d at 84.

The testimony that Officer Justus and Captain Jordan gave at trial was essentially the same as the testimony that they gave at Defendant's suppression hearing.  The only difference is found in the testimony of Justus: at trial he testified that he did not remember whether Defendant stated that he was "smoking *marijuana*" or merely that he was "smoking." At the suppression hearing, however, Justus testified that Defendant admitted to smoking marijuana.  This discrepancy does not affect the admissibility of Defendant's statement, however.

After a review of both the trial and suppression hearing records, we believe that the circumstances of the questioning in this case did not require Miranda warnings before Defendant made his statement to Officer Justus.  Defendant relies, in part, on our Supreme Court's decision in State v. Anderson, 937 S.W.2d 851 (Tenn. 1996), to support the argument that Defendant was "in custody" for purposes of Miranda warnings when he spoke to  Officer Justus.  This reliance is misplaced.  The defendant in Anderson was not incarcerated at the time the statements were made.  The objective assessment factors that the Court considered relevant to determine whether the defendant in Anderson was "in custody" are thus not analogous to Defendant's circumstances.  Defendant's brief cites numerous conditions of prison life to bolster his contention that he was "in custody" (i.e., Defendant was told what to do on a daily basis, he was instructed regarding what time to arise and to sleep, he had no choice regarding what he would eat or wear, etc.).  There is no dispute regarding the fact that Defendant was in custody in the literal sense of the word.  As we discussed above, however, an inmate is not in custody for Miranda purposes unless there is an *added* imposition on the inmate's freedom of movement.  Goss, 995 S.W.2d at 629 (emphasis added). Mere prisoner status is not sufficient.  Id.

In Goss, our Court held that factors relevant to deciding whether there was additional imposition on an inmate's freedom of movement were (1) the language used to summon the inmate, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure, if any, exerted to detain the inmate.  Id.

The trial court found, specifically, that neither the language used by Justus to summon Defendant to the supervisor's office, the Defendant's physical surroundings during interrogation, nor the extent to which Defendant was confronted with evidence of his guilt rendered Defendant "in custody" for Miranda purposes. In addition, the trial court found that Justus exerted no additional pressure on Defendant when he detained him for questioning. Under our holding in Goss, the trial court's findings are sufficient to conclude that Defendant was not "in custody" for Miranda purposes at the time he was questioned by Officer Justus. Consequently, Defendant's constitutional rights as defined in Miranda were not violated, and his statements were properly admitted.

The evidence does not preponderate against the trial court's findings that Defendant was Mirandized before the questioning by Captain Jordan and Detective Hagen began. Also, the proof supports the trial court's findings that Defendant understood the warnings given him and that he waived them before making his statements. Defendant's brief cites State v. Smith, 834 S.W.2d 915 (Tenn. 1992), for the proposition that Defendant's statements to Jordan were tainted by the fact that his earlier statements were unconstitutionally extracted in violation of Miranda. But we have already decided that Defendant's previous statements were indeed admissible. Defendant is not entitled to relief on this issue.

### CONCLUSION

In conclusion, we find that Defendant has failed to satisfy his burden of showing that the evidence preponderates against the trial court's findings. Accordingly, we find that the trial court did not err when it denied Defendant's motion to suppress. The judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE

-6-