# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 6, 2006

## STATE OF TENNESSEE v. JIMMY BERNARD CLARK

**Appeal from the Circuit Court for Madison County**
**No. 04-738     Roy B. Morgan, Jr., Judge**

---

**No. W2005-02081-CCA-R3-CD  - Filed September 18, 2006**

---

The Defendant, Jimmy Bernard Clark, was convicted by a Madison County jury of attempted aggravated burglary, a Class D felony.  Following a sentencing hearing, the Defendant received a twelve-year sentence as a career offender.  On appeal, he argues that the trial court erred in denying his motion to suppress a statement made to the police and that the evidence was insufficient to support his conviction.  After a review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined.  GARY R. WADE, P.J., not participating.

Lowe Finney, Jackson, Tennessee, for the appellant, Jimmy Bernard Clark.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

In March of 2004, an external intrusion alarm was installed at the residence on 548 East Main Street due to a number of recent burglaries.  Two sensors were installed at the residence, one in the front of the house and the other at the rear.  On June 30, 2004, a few minutes before midnight, both sensors were activated, and a recorded message was immediately sent over the police radio.

Officer Shane Richards, Chief Pilot of the Jackson Police Department Aviation Unit, arrived at the scene approximately fifteen seconds after receiving the radio notification.  The helicopter piloted by Officer Richards was equipped with a forward looking infrared thermal imagery camera.  According to Officer Richards, he "observed two subjects run out of the rear of the residence through

a door[.]" He then spotlighted the two subjects because "they were running from a lit area to a darker area[.]" At the same time, Officer Susan Hemby of the Jackson Police Department arrived on the scene and began to pursue the subjects on foot.

As the subjects were fleeing the scene, they separated, and Officers Richards and Hemby were able to pursue only one subject. This subject, co-defendant Marty Clark, was eventually apprehended and arrested. While the officers were pursuing Marty Clark, they broadcasted a description of the other subject. They described the subject as a black male wearing dark pants and a white or light-colored T-shirt with lettering on it.

Officer Mike Jenkins of the Jackson Police Department was patrolling the area looking for the second subject and spotted an individual matching the description. He radioed this information "to guys on the ground and cars and helicopter pilot."

Following apprehension of the first subject, Officer Richards assisted in the search for the second subject and proceeded to the area where Officer Jenkins had spotted the second subject. Officer Richards stated:

> We went to [the subject's] location and put the spotlight on him lighting up that area because that alleyway at Chester and the alleyway at the frontage road is a dark area. . . . The suspect walked across East Chester still in a southeasterly direction. . . . The subject walked down Middle Street. I was directing officers to his location. . . . As he approached Mary Long's Cafe, Sergeant Hinson and Officer Brockmier pulled up behind him. As soon as they opened their door, the subject fled on foot east.

According to Officer Richards, there was not "any other foot traffic out there that night[.]" Officer Richards also recognized the second subject as the one he had originally seen fleeing from the rear door of the residence.

After Officer Richards located the subject, the subject was continuously spotlighted, and officers were able to apprehend him after he "ducked into a porch[.]" The second suspect, the Defendant, was arrested and placed in the back of Officer Jenkins' patrol car. During transport to the police station, the Defendant asked: "How did y'all know it was me?"

Following apprehension of the two suspects, the owners arrived at the residence, and a search of the residence revealed that a front window and the rear door were ajar. Several items inside the house were amiss. According to the owners, they did not know the Defendant or the co-defendant and did not give them permission to enter the residence.

Helicopter equipment taped part of the incident, but the tape "ran out" during the pursuit of the first subject. This tape, which showed the initial flight by the two subjects from the residence and the following pursuit of the first subject, was admitted into evidence at trial.

On October 4, 2004, a Madison County grand jury indicted the Defendant along with co-defendant Marty Clark for aggravated burglary. Following a trial by jury, the Defendant and co-defendant were convicted of the lesser-included offense of attempted aggravated burglary.

A sentencing hearing was held on June 20, 2005. The trial court sentenced the Defendant to twelve years as a career offender, which was to be served consecutively to a prior sentence for especially aggravated robbery.

The Defendant filed a motion for new trial, which was denied. This timely appeal followed.

## ANALYSIS
### I. Motion to Suppress

First, the Defendant argues that the trial court erred by denying his motion to suppress his statement made to Officer Jenkins while being transported to the jail for booking. Officer Jenkins testified that while in route to the police station, the Defendant asked: "How did y'all know it was me?"[1] The Defendant argues that "there are no specific, articulable facts that this individual had committed the crime." He points to the following facts:

> [O]fficers were given a very general description, *to wit*: a black male with a white shirt. Further, [the Defendant] was blocks away from the residence when apprehended after a pursuit by officers. When officers first noticed him, he was *walking*, not running. Moreover, Officer Jenkins even testified that he *knew* that other black males lived in the area.

In short, the Defendant contends that police seized him illegally, arguing that the seizure was not supported by probable cause, and that his illegal seizure tainted the statement which he subsequently made to Officer Jenkins.

At the conclusion of the suppression hearing, the trial court denied the Defendant's motion, reasoning as follows:

> The Court finds when you look to the totality of the circumstances that existed, and that's what you have to look to in a case such as this, certainly there was

---

[1] In the Defendant's motion to suppress, he sought suppression of the following statement which he allegedly made during the booking process: "I went into the house because I did not know anyone was living there. I thought it was vacant. I looked around and saw all the nice stuff and said Damn." The State did not attempt to introduce this statement at trial but only the question the Defendant asked during transport, "How did y'all know it was me?"

reasonable suspicion to stop, and probable cause was established, noting what probable cause means to make the arrest of [the Defendant] at the time. So I'm going to deny the Motion to Suppress.

The findings of fact made by the trial court at a hearing on a motion to suppress are conclusive on appeal and binding upon this Court unless the evidence preponderates otherwise. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law, see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002), as the application of the law to the facts found by the trial court are questions of law that this Court reviews de novo on appeal, see State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Furthermore, questions of the "credibility of the witness, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Yeargan, 958 S.W.2d at 628. The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that can be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001); Odom, 928 S.W.2d at 23. Finally, both the evidence presented at the suppression hearing and the proof adduced at trial may be considered in reviewing the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

Tennessee Code Annotated section 40-7-103(a)(3) provides that an officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3). In the instant case, it was probable that a burglary had been committed upon the activation of the intrusion alarms at the 548 East Main Street residence. Burglary, in its varying forms, is a felony. See id. § 39-14-402 to -404. Thus, our next inquiry is whether police reasonably believed the Defendant committed the offense. State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Our supreme court has explained that "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act," constitutes probable cause. Henning, 975 S.W.2d at 294.

Courts should determine the existence of probable cause after assessing all of the information available to the officer at the time of arrest. State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990). To this end, Tennessee Rule of Criminal Procedure 4(b) provides that in the application for the issuance of an arrest warrant, "[t]he finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Tenn. R. Crim. P. 4(b). It has long been established that "[w]hile this rule applies itself particularly to warrants for arrest, the same principle must be considered applicable to establish probable cause where an arrest has been made without a warrant." State v. Raspberry, 640 S.W.2d 227, 228 (Tenn. Crim. App. 1982); see also State v. Tays, 836 S.W.2d 596, 600 (Tenn. Crim. App. 1992).

-4-

In the instant case, intrusion alarms had been installed at the 548 East Main Street residence. On the evening in question, the alarms were activated about midnight, and the police were alerted. Officer Richards flew to the area by helicopter and spotlighted two individuals fleeing from the rear of the residence. At this time, Officer Hemby, who had also arrived on the scene, chased the two subjects on foot.

The subjects ran in different directions, and Officer Richards was able to pursue only one subject. Officer Hemby chased the subject being spotlighted. However, the officers communicated by radio a description of the other subject to police in the area. Both officers gave a similar description of this subject — a black male wearing dark pants and a white or light-colored T-shirt with lettering on it.

After the first subject was taken into custody, Officer Richards joined in the search for the second subject. He was directed by Officer Jenkins to "an alleyway at East Chester," and once there, he located and spotlighted the second subject. The subject again began to run. After a foot pursuit by officers on the ground, the subject, later identified as the Defendant, was taken into custody.

According to Officer Richards, this was the same individual he had observed earlier fleeing from the residence at 548 East Main Street. The photo taken of the Defendant following his arrest shows that he was wearing a T-shirt matching the description given by Officers Richards and Hemby. Moreover, Officer Richards stated that there was no "other foot traffic out there that night[.]" Based upon this information, police had probable cause to believe that the Defendant committed or attempted to commit a burglary of the residence. Accordingly, we conclude that the arrest of the Defendant was lawful. Additionally, the statement the Defendant made to Officer Jenkins during transport was not in response to questioning or prompting but rather offered voluntarily. See State v. Brown, 664 S.W.2d 318, 320 (Tenn. Crim. App. 1984) (such voluntary statements are admissible in evidence whether or not Miranda warnings are given first). The trial court properly denied the Defendant's motion to suppress.

## II. Sufficiency

As his other issue, the Defendant challenges the sufficiency of the evidence. Specifically, he argues:

> Initially, there is no indication that [the Defendant] entered or attempted to enter the residence. Although evidence was presented that a door and window were opened, there is no evidence that [the Defendant] opened either one. In light of the fact that two individuals were seen at the residence, neither of which was positively identified as [the Defendant], the evidence is insufficient to convict [the Defendant] of attempted aggravated burglary.
>
> Second, there is a lack of positive identification of [the Defendant] as the individual seen running from the residence. . . .

Thirdly, the State introduced evidence that [the Defendant], after being apprehended, stated "How did ya'll [sic] know it was me?" However, Investigator Taylor admitted that [the Defendant] wanted to discuss a separate, unrelated incident. Therefore, the inference that [the Defendant's] question to officers is necessarily related to the incident for which he was tried and convicted is greatly diminished given that he evidently spoke regarding a different incident.

Finally, there is no fingerprint evidence, and, because no items were taken from the house, none were found on [the Defendant]. No physical evidence connects [the Defendant] with an attempted entry into the residence.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The Defendant was convicted of attempted aggravated burglary. A person commits criminal attempt when the person, acting with the kind of culpability otherwise required for the offense,

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a). Aggravated burglary occurs when, without the effective consent of the property owner, a person enters a habitation with intent to commit a felony, theft, or assault. Tenn. Code Ann. § 39-14-402, -403.

The evidence in the light most favorable to the State established that both sensors at the residence were activated, one in the front and one in the back, and officers arrived at the residence approximately fifteen seconds after receiving radio notification. Officers Richards spotlighted the two subjects fleeing from the rear door of the residence. Officers lost sight of the Defendant for a short time when the subjects separated, but the Defendant was located only minutes later. Upon locating the Defendant, the Defendant again attempted to elude officers after he was spotlighted and officers began to approach him. Officers Richards identified the Defendant as the person he initially saw fleeing the residence. Moreover, according to Officer Richards, the Defendant was the only foot traffic in the area on the evening in question. Finally, the owners of the residence testified that both a front window and the rear door were open and that items in the residence were amiss.

The Defendant's argument that the statement, "How did y'all know it was me?" was made in reference to another incident raised an issue of weight and credibility for the jury. Moreover, the lack of physical evidence supports a conviction for the lesser-included offense of attempt. The evidence established at trial was sufficient to support the verdict of the jury of guilty beyond a reasonable doubt. The Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the Madison County Circuit Court.

_____
DAVID H. WELLES, JUDGE