IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 3, 2026 Session

## STATE OF TENNESSEE v. ALBERT DEJUAN WHITE

**Appeal from the Circuit Court for Tipton County**
**No. 11361     A. Blake Neill, Judge**

——————————————————

**No. W2025-00253-CCA-R3-CD**

——————————————————

STEVEN W. SWORD, J., concurring in results.

I write separately from the well-reasoned majority opinion because I would reach a different conclusion regarding whether law enforcement officers violated *Miranda v. Arizona*, 384 U.S. 436 (1966), as explained below.  In all other respects, I agree with the opinion and concur in the results.

The majority opinion concisely and accurately delineates the law regarding *Miranda's* implications for statements made by someone in police custody, as well as the facts found by the trial court.  They need not be rehashed here in detail.  My point of difference is based on the application of the law to the facts, which we review de novo with no presumption of correctness.  *State v. Tuttle*, 515 S.W.3d 282, 299 (Tenn. 2017) (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) and then citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999)).  Specifically, I contend that the actions of the law enforcement officers after the Defendant expressed his desire for his parents to be allowed to return home and avoid the summer heat violated the Defendant's rights under *Miranda*.

Both parties questioned Investigator Williams at the suppression hearing about the exchange he had with the Defendant during the execution of the search warrant at his parents' home.  Investigator Williams had the following exchange during his testimony:

Q. Did you ever ask him to show you where anything was located?

1

A. I didn't ask him, but he told me he would show us where everything was. *And I said, okay, point the direction.* (emphasis added).

Detective Baylous testified that after Investigator Williams informed him that the Defendant volunteered to show them where the drugs were located to speed up the process of the search and get his parents back inside the home, he approached the Defendant to confirm that he was going show them where the narcotics were. Detective Baylous then had the following exchange with defense counsel:

A. I told Mr. White, I was like, are you going to show us where the drugs were.
Q. Exactly. You asked him the question, are you going to show us where the drugs are?
A. That was it.

From the moment law enforcement arrived to serve the search warrant, the Defendant had been under law enforcement's control. The parties agreed that the Defendant was in custody for *Miranda* purposes, was in handcuffs, and was always under the supervision of at least one officer. As soon as he had the conversation with the officers about showing them where the drugs would be found, he walked to the shed and pointed to the drugs, while still in the custody of the officers. It is my opinion that the follow-up question by Detective Baylous to the Defendant of whether he was going to show them where the drugs were, and the action of directing him to "point the way" to the drugs by Investigator Williams, qualify as interrogation designed to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.") S*ee also State v. Northern*, 262 S.W.3d 741, 750 (Tenn. 2008). Since this was done without the benefit of the *Miranda* warnings, law enforcement's actions violated *Miranda*.

I do not disagree with the majority that the Defendant initiated the conversation that he would show them where the drugs were located. This was a spontaneous statement by the Defendant, not a response to interrogation, and therefore not in violation of *Miranda*. *See State v. Brown*, 664 S.W.2d 318, 320 (Tenn. Crim. App. 1983). His initial statements neither described where the drugs were nor pointed to their location. He merely revealed that he possessed such knowledge, which is relevant to guilt and admissible. However, it was not until the officers asked follow-up questions and directed him to lead them to the drugs that they gained the additional incriminating information and discovered the larger quantity of drugs. It is irrelevant, for purposes of a *Miranda* analysis, who initiated the conversation. If law enforcement conducts any interrogation designed to elicit an incriminating response, they must first give *Miranda* warnings to the person in custody.

2

Here, the officers went beyond receiving the Defendant's spontaneous declaration. Once the spontaneous declaration was made, the officers took further action to obtain additional information from the Defendant. This amounted to custodial interrogation. Once the Defendant stated that he would show the officers where the drugs were located, the officers should have given the Defendant his *Miranda* warnings before having him lead them to the location. I would hold that the act of the Defendant leading the officers to the drugs in the shed and pointing to their location should have been suppressed solely on *Miranda* grounds.

Although I do not agree with the majority's opinion on this issue, I do concur with the results. The *Miranda* violation would only result in the suppression of the statements, not necessarily the fruits of the violation. *See State v. Climer*, 400 S.W.3d 537, 567 (Tenn. 2013). A violation of *Miranda* does not necessitate suppression of physical evidence discovered as a result of the statement, as long as the statement was otherwise voluntarily made. *See U.S. v. Patane*, 542 U.S. 630, 644 (2002) ("[A]lthough it is true that the Court requires the exclusion of the physical fruit of actually coerced statements, it must be remembered that statements taken without sufficient *Miranda* warnings are presumed to have been coerced only for certain purposes and then only when necessary to protect the privilege against self-incrimination. . . . [W]e decline to extend that presumption further."). Here, the Defendant does not argue that the officers engaged in any coercive behavior. Although the Defendant notes that he was concerned about the welfare of his frail parents, he made no claim in the trial court or on appeal that his statement was involuntary beyond his *Miranda* argument.

Furthermore, both officers testified that the search warrant authorized the search of all outer buildings, and they would have eventually searched the shed where the large quantity of narcotics was found, regardless of any statements made by the Defendant. Thus, the doctrine of inevitable discovery would likely justify admission of the narcotics in this very unique set of circumstances, even had the statement been involuntarily made. *See State v. Cothran*, 115 S.W.3d 513, 525 (Tenn. 2003) ("Under the inevitable discovery doctrine, illegally obtained evidence is admissible if the evidence would have otherwise been discovered by lawful means." (first citing *Nix v. Williams*, 467 U.S. 431, 444 (1984), and then citing *State v. Ensley*, 956 S.W.2d 502, 511 (Tenn.Crim.App.1996)).

For the foregoing reasons, I respectfully submit this separate opinion concurring in the results.

s/ *Steven W. Sword*_____

STEVEN W. SWORD, JUDGE

3