IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 26, 2000 Session

**STATE OF TENNESSEE v. TREVA DIANNE GREEN**

**Appeal from the Circuit Court for Blount County**
**No. C-10642      D. Kelly Thomas, Judge**

**No. E1999-02204-CCA-R3-CD**
**December 14, 2000**

The defendant appeals from her Blount County Circuit Court conviction and sentence for driving under the influence, a Class A misdemeanor. The trial court sentenced the defendant to eleven months and 29 days in the Blount County Jail, all of which was suspended except for service of eight days incarceration. The jury imposed a fine of $1,500. In this direct appeal, the defendant complains that the evidence is insufficient to support her conviction, that statements she made to the arresting officer should have been suppressed, that prosecutorial misconduct taints the verdict, that the jury should have been charged on reckless driving as a lesser-included offense, and that her sentence and fine are excessive. We affirm the judgment of the trial court, as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed as Modified**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Steve Merritt, Maryville, Tennessee for the appellant, Treva Dianne Green, on appeal.

Paul G. Summers, Attorney General and Reporter, Clinton J. Morgan, Nashville, Tennessee, Michael L. Flynn, District Attorney General, Edward P. Bailey, Jr., Assistant District Attorney General, Kirk Andrews, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Treva Dianne Green, appeals as of right from her Blount County conviction following a jury trial for driving under the influence of an intoxicant (DUI), first offense, a Class A misdemeanor. See Tenn. Code Ann. § 55-10-401 (1997). The trial court imposed a sentence of eleven months, twenty-nine days, with the first eight days to be served in confinement and the remainder on supervised probation. The jury imposed a fine of $1,500. In this appeal, the defendant raises the following issues:

1. Was the evidence sufficient to sustain the defendant's conviction for DUI?
2. Did the trial court err in not suppressing the defendant's statements?
3. Did the prosecution engage in misconduct in closing argument that affected the verdict to the prejudice of the defendant?
4. Did the trial court err in not charging the jury on reckless driving as a lesser-included offense?
5. Did the trial court abuse its discretion in sentencing the defendant and allowing the jury to impose the maximum fine?

After a review of the record, the briefs of the parties, and the applicable law, we affirm the trial court's judgment although we modify the judgment to reflect a confinement percentage of thirty percent of the total sentence.

The defendant was charged with DUI after Townsend police officer Mark Gann stopped the white Jeep Cherokee she was driving along Highway 321 in Blount County on August 6, 1997, just before midnight. Earlier that evening, the E-911 Communications Center had notified local law enforcement to be on the lookout ("BOLO") for this vehicle because it was being operated in a dangerous manner.

Officer Gann drove to the parking lot of the post office on Highway 321. He soon spotted the defendant's white Jeep Cherokee, and when the vehicle passed he pulled out and followed to observe it. He observed that the Jeep Cherokee was weaving, and it crossed the center line of the highway three times. He followed the defendant's vehicle for approximately five-tenths of a mile, and after watching it weave back across the center line the third time, Officer Gann turned on his emergency equipment to signal the motorist to stop, which the defendant did.

Officer Gann approached the vehicle and observed that the driver's side window was down. The defendant produced her driver's license at his request, and when she turned to speak, Officer Gann detected the odor of alcohol about her breath. Before she turned, he did not smell anything. He informed her that she had been stopped because of her erratic driving and the E-911 advisory, and he asked her to walk to the rear of his cruiser. She complied, but she stumbled over her feet. Officer Gann told the defendant that he detected the odor of alcohol on her breath; he then asked if she had consumed any alcohol that night. She responded that she had "probably consumed too much rum to drive."

Officer Gann administered the walk-and-turn and the one-leg stand sobriety tests to the defendant. Although she was barefoot, the roadway was paved at that location. The defendant did not appear at all focused or attentive when the officer explained to her how to perform the tests, and she performed poorly. Moreover, during the instructional stage of the tests, the defendant laughed a lot, and she repeatedly interrupted Officer Gann by giggling. She also patted him on the shoulder when he demonstrated the one-leg stand and otherwise tried to hang onto him.

-2-

When the field sobriety tests were completed, Officer Gann concluded that the defendant was under the influence of an intoxicant while operating her vehicle. He arrested her and transported her to the Blount County jail. Before the drive began, he requested that she submit to a blood alcohol test; she refused and explained that her attorney always advised her never to take that test. Then, while en route to the jail, the defendant referred in general terms to her prior run-ins with the law, and she made suggestive comments about how she had avoided being arrested in another jurisdiction. Also, once at the jail and just before she was removed from the cruiser, the defendant asked the officer if she gave him a "blow job," could she "go home free."

The defendant did not testify at trial, but her husband, David Lee, did. He recounted for the jury numerous physical and emotional problems with which his wife recently had been confronted. The defendant's mother had died less than six months before the defendant's arrest in this case, and the relationship with her brother had thereafter deteriorated and become extremely acrimonious.

In addition, in 1972 the defendant was involved in an automobile accident that required multiple surgeries, and approximately three months before her DUI arrest, the defendant was involved in another car accident that resulted in hospitalization. According to her husband, the defendant had been diagnosed as suicidal, and she had been prescribed medication for depression. Because of previous surgeries, the defendant also was receiving hormone shots.

The defendant's husband claimed that his wife had consumed no alcoholic beverages the day or evening of her arrest and that, in fact, she did not drink at all. As for the odor of alcohol on the defendant, the husband explained to the jury that their children had accidently knocked over his mixed alcoholic beverage earlier in the evening, and the drink had spilled on the defendant. She did not change her clothing before going for a drive because the family was on its way home from a vacation, and there were no clean clothes available.

The jury retired and deliberated for 28 minutes in this case before announcing its verdict that the defendant was guilty of driving under the influence of an intoxicant and that a fine of $1,500 was assessed.

## I. Sufficiency of the Evidence

The defendant complains that the state failed to prove beyond a reasonable doubt that she was under the influence of an intoxicant. We must disagree.

The standard that we apply in reviewing the sufficiency of the convicting evidence is familiar. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including its direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt

that the defendant is guilty of the charged crime. See Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990); Tenn. R. App. P. 13(e).

The defendant invites us to step into the role of factfinder on appeal. She cites to Officer Gann's admission that her vehicle crossed over the center line only by a tire width and that the swerving could have been for some reason other than intoxication. Officer Gann, the defendant emphasizes, conceded that the smell of alcohol could have emanated from her clothing. Furthermore, Officer Gann testified that the defendant did not have bloodshot eyes, dilated pupils, or slurred speech.

The defendant, likewise, emphasizes her husband's testimony that she did not partake of alcohol at all, that their children had accidently knocked over his mixed alcoholic beverage earlier in the evening, and that the drink had spilled on the defendant. As for the field sobriety tests, the defendant's husband testified that she had numerous physical problems affecting her balance; also, the defendant was barefoot at the time that she was tested.

Despite these remonstrations, we must decline the defendant's invitation. In determining sufficiency of the evidence, the court does not replay and reweigh the evidence. See State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978); Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the court is not an appellate surrogate for the trier of fact.

Although the Jackson v. Virginia standard of review is often cited, the delicate balancing of interests that produced the standard is mentioned seldom, if at all. This case serves to remind us of the balance that has been struck. "[T]he relevant question," the United States Supreme Court stated, "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. The Supreme Court continued,

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Id. (footnotes omitted).

The evidence in the light most favorable to the state shows that the defendant was driving her vehicle in an erratic and dangerous manner. She crossed over the centerline of the highway on three occasions while being observed by Officer Gann. When stopped, the defendant had a detectable odor of alcohol about her. She stumbled after she got out of her vehicle. She failed two field sobriety tests administered by Officer Gann, and she refused to submit to a blood alcohol test. When asked if she had been drinking, the defendant replied that she had probably consumed too much rum to drive. Throughout the roadside encounter, the defendant exhibited inappropriate behavior. She hung onto the officer and patted him on the shoulder; she also laughed, giggled, and repeatedly interrupted him. Finally, while she was being transported to jail by the arresting officer, the defendant made sexually suggestive remarks about how she had previously avoided being arrested, and she propositioned the officer to let her go free in exchange for performing oral sex on him.

This court has previously found evidence of DUI sufficient even though it consisted entirely of the arresting officer's testimony. In State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993), the evidence was sufficient to support a DUI conviction when the trial court relied only upon the arresting officer's testimony that the defendant was driving under the influence. Id. In Vasser, the defendant did not complete the field sobriety tests and refused to take a breath test. Id. at 543-44. In State v. Corder, 854 S.W.2d 653 (Tenn. Crim. App. 1992), the defendant was found asleep in his car and no field sobriety tests were administered. Id. at 654. This court affirmed the DUI conviction because the trial court accredited the testimony of the arresting officer over the other witnesses. Id.

Driving under the influence may be shown by circumstantial evidence. State v. Lawrence, 849 S.W.2d 761, 763 (Tenn. 1993); Corder, 854 S.W.2d at 654. The proof in the present case was clearly sufficient to allow a rational fact finder to conclude beyond a reasonable doubt, based upon both direct and circumstantial evidence, that the defendant was driving under the influence.

## II. Suppression Issues

The defendant is aggrieved that the trial court did not grant her motions to suppress statements she made to the arresting officer. The state correctly notes that the defendant does not quote in her brief which statements are in issue. Nevertheless, from the transcripts and pleadings before us, including the defendant's new trial motion, it is evident that two statements and one question are involved.

The first statement the defendant made was in response to a question posed by Officer Gann. During the traffic stop, he asked about her alcohol consumption. She replied that she had drunk too much rum to drive. The second challenged statement was made while the defendant was being transported to jail. She referred to prior run-ins with the law and made suggestive comments

about "doing things" to avoid being arrested in another jurisdiction. The third challenged "statement" is more properly regarded as a question or an "offer" to the arresting officer. Before being removed from the police cruiser at the jail, the defendant offered to perform fellatio in exchange for being released.

The defendant challenges the admissibility of the first statement on constitutional grounds. She argues that she was subjected to custodial interrogation without having been advised of her <u>Miranda</u> rights. She claims that any statement to the officer as a result of such custodial interrogation was unconstitutionally obtained, and thus, the statement should not have been admitted at trial. The defendant maintains that the second statement and the sexual proposition were inflammatory and unfairly prejudicial, pursuant to Tennessee Evidence Rule 403, and constituted inadmissible evidence of other wrongs, crimes, or acts, pursuant to Tennessee Evidence Rule 404(b). We first will address the constitutional challenge and then discuss the evidentiary objections.

A. Miranda warnings.

At the outset, we must decide what standard of review to apply. In this case, the trial judge made no findings of fact concerning the defendant's statements to Officer Gann. Moreover, no live testimony or evidence was presented at the hearing on the motion to suppress. Rather, the parties submitted to the trial court a transcript of the preliminary hearing, which was conducted before a different judge, and the parties argued their respective positions to the trial court. At least once before on a motion to suppress, when identical circumstances arose, our court held that "review will be <u>de novo</u>." <u>State v. Dougherty</u>, 930 S.W.2d 85, 86 (Tenn. Crim. App. 1996). In light of the recent decision in <u>State v. Binette</u>, ___ S.W.3d ___, No. 1998-00236-SC-R11-CD (Tenn., Knoxville, Oct. 5, 2000), however, we feel obliged to explore the matter in greater depth.

In <u>Binette</u>, the supreme court restated the standard of appellate review for suppression issues as had been settled upon in <u>State v. Odom</u>, 928 S.W.2d 18 (Tenn. 1996).

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

<u>Id.</u> at 23. The supreme court in <u>Binette</u> then rejected that standard of review for a trial court's findings of fact on a motion to suppress when they are based on evidence that does not involve issues of credibility; the proper standard in that situation is <u>de novo</u> review without a presumption of

correctness. The supreme court explained that "when a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions." Binette, slip op. at 3.

The evidence in Binette was a videotape of a vehicle stop, and the suppression issue was whether the officer had reasonable suspicion for the stop and detention. In this case, the evidence is a preliminary hearing transcript of the arresting officer's testimony, and the issue is whether defendant's statements to the officer should be suppressed.[1] The question becomes whether the preliminary hearing transcript should be treated as was the Binette videotape. There is language in Binette suggesting that similar treatment is appropriate.

> In the context of workers' compensation cases, this Court has held that "where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition . . . then this Court may draw its own conclusions about the weight and credibility of that testimony." Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997). The rationale allowing an appellate court to review such evidence de novo without a presumption of correctness is clear: the reviewing court is in the same position as the trial court and is just as capable of reviewing the evidence. See id. Similarly, when a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions.

Binette, slip op. at 3. While this is not a workers' compensation case, our court is in the same posture as the trial court vis-a-via the preliminary hearing transcript. That is, the trial judge read a cold record of a hearing over which he did not preside; our court is just as capable of reviewing that same cold record and drawing our own conclusions.

We are mindful, however, that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). The trial court in this case did hear the testimony of Officer Gann at trial, and the trial court observed his demeanor at that time. In the absence of findings, it may be possible for us to assume that the trial court found the officer to be credible. See Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 775 (Tenn. 2000). That credibility determination is entitled to substantial deference on appeal.

---

[1] The defendant in this case did not challenge whether probable cause or reasonable suspicion existed to stop her vehicle. At any rate, it is highly unlikely that any such motion challenging the stop would have succeeded. As contrasted with the vehicle "weaving" in Binette, Officer Gann testified in this case that the defendant's vehicle crossed the center line of the highway three times, following which he signaled the defendant to pull over and stop.

Therefore, our review of the denial of the defendant's suppression motion requires a dual standard of review.

We begin with the law regarding questioning incident to traffic stops. In Berkemer v. McCarty, 468 U.S. 420, 104 S. Ct. 3138 (1984), the United States Supreme Court rejected the notion that all traffic stops are subject to the dictates of Miranda. "[Q]uestioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." Id. at 437, 104 S. Ct. at 3149. In the traffic stop situation, Miranda protections only come into play if a motorist detained pursuant to a traffic stop is subjected to treatment that renders him or her "in custody" for practical purposes. Id. at 440, 104 S. Ct. at 3150.

"In custody" has been defined as a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322-23, 114 S. Ct. 1526, 1528-29 (1994); State v. Bush, 942 S.W.2d 489, 499 (Tenn. 1997). The United States Supreme Court has held that it is appropriate to apply an objective test to determine whether a person is in custody and therefore entitled to receive Miranda warnings. See Stansbury, 511 U.S. at 323, 114 S. Ct. at 1529; Florida v. Royer, 460 U.S. 491, 501-02, 103 S. Ct. 1319, 1326 (1983). Courts look to the totality of the circumstances of the interrogation and inquire "how a reasonable man in the suspect's position would have understood his situation." Berkemer, 468 U.S. at 422, 104 S. Ct. at 3151; see also Stansbury, 511 U.S. at 323-24, 114 S. Ct. at 1529.

In State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996), the Tennessee Supreme Court expressly adopted Berkemer's objective analysis and recognized several nonexclusive factors to aid in the assessment of whether a reasonable person would consider himself deprived of freedom of movement to a degree associated with a formal arrest. Relevant factors include the following: the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. See id.

From our review of the record, we are of the opinion that the trial court correctly denied the defendant's motion to suppress, and we affirm the trial court's ruling.

At the preliminary hearing, Officer Gann testified that when he approached the defendant's vehicle, she asked why she had been stopped. Officer Gann told her about the BOLO for the vehicle she was driving. Officer Gann stated that when the defendant started speaking, he noticed an odor of alcohol. At that point, Officer Gann asked her how much she had to drink, and

the defendant answered that "she had too much rum to drink tonight to drive." The officer then requested that she step out of her vehicle and follow him so he could administer field sobriety tests. At the conclusion of the field sobriety testing, Officer Gann placed her under arrest for driving under the influence.

At trial, Officer Gann related that he approached the vehicle and asked for the defendant's operator's license. When she turned to speak to him, he noticed an odor of alcohol. The officer advised the defendant that he had stopped her because of her erratic driving and because of the earlier BOLO. He asked her to get out of her vehicle and step to the rear of his vehicle. The officer observed that she stumbled while walking, and he asked her if she had anything to drink because he detected the odor of alcohol. The defendant told him that "she had probably consumed too much rum to drive." He asked her to perform field sobriety tests; after the testing, Officer Gann determined that she was under the influence of an intoxicant and placed her under arrest.

The slight differences in the officer's testimony at the preliminary hearing and at trial are not significant in terms of the suppression issue. Regarding the preliminary hearing testimony, we have reviewed the transcript de novo, and we independently conclude that the defendant was not in custody for purposes of Miranda at the time she told the officer that she had consumed too much rum to drive. We reach the same conclusion when we apply the Odom standard of appellate review to Officer Gann's trial testimony.

The facts in this case fit the situation in Berkemer like a well-worn glove. The defendant in Berkemer was stopped by a highway patrolman as a result of his erratic driving. Berkemer, 468 U.S. at 423, 104 S. Ct. at 3141. The defendant had trouble standing and failed to satisfactorily perform a field sobriety test. Id. Although the officer subjectively believed that he would charge the defendant with a traffic offense, he did not advise the defendant that he was in custody. Id. The defendant then made incriminating statements to the officer that he had consumed alcohol and marijuana shortly before being stopped. Id. On those facts, the United States Supreme Court concluded that the statement was admissible, even though the defendant had not been advised of his Miranda rights. According to the Supreme Court, on the facts before it, the brief roadside detention did not constitute "custody" for the purposes of Miranda. Id. at 440, 104 S .Ct. at 3150.

As in Berkemer, the defendant in this case was detained for a short period of time prior to her arrest. The defendant's statement about drinking rum was in response to only modest questioning by the officer who had observed dangerous and erratic driving. Officer Gann was the only officer involved in the traffic stop. There is no evidence that Officer Gann informed the defendant, prior to her arrest, that she was not free to leave. Likewise, there is no evidence that Officer Gann's tone of voice or demeanor was overbearing or threatening. Also, Officer Gann did not arrest her until after he administered the field sobriety tests. These considerations, regarded as relevant to the assessment whether a reasonable person would consider herself to be in custody, all point to the conclusion that Officer Gann was not constitutionally required to advise the defendant pursuant to Miranda. Therefore, the defendant's motion to suppress was properly denied.

B.  Evidentiary objections

The defendant has not raised a constitutional objection to the admissibility of her second statement or of her proposition to the arresting officer.  We note that even had a constitutional challenge been interposed, it would have failed.  Neither the  statement nor the proposition was the product of an unconstitutional custodial interrogation.  Indeed, we find no evidence that there was any interrogation.  The defendants's comments were spontaneous and unsolicited, and probably for this reason, the defendant has couched her objections in terms of evidentiary admissibility.  See, e.g., State v. Brown, 664 S.W.2d 318, 320 (Tenn. Crim. App. 1984) (statement given voluntarily without any compelling influences is admissible in evidence whether or not Miranda warnings are given first); State v. Chambless, 682 S.W.2d 227 (Tenn. Crim. App. 1984) (volunteered statements of any kind are not barred by the Fifth Amendment).

On appeal, the defendant argues based upon Tennessee Rules of Evidence 403 and Rule 404(b) that her second statement and her subsequent proposition to the officer were  improperly admitted.  The defendant never objected at trial, however, on the basis of Rule 404(b) of the Tennessee Rules of Evidence.  The defendant's written motion in limine on this topic asserted only that admission of the evidence was unfairly prejudicial.  See Tenn. R. Evid. 403.  The defendant did not request a hearing for the trial court to determine if "a material issue existed other than conduct conforming with a character trait."  See Tenn. R. Evid. 404(b)(1), (b)(2).

"[A] party is bound by the grounds asserted when making an objection.  The party cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court."  State v. Adkisson, 899 S.W.2d 626, 634 (Tenn. Crim. App. 1994); see State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App.1988) (cannot object on one ground and assert new basis on appeal).  When that happens, as in this case, the party waives the issue.  See Adkisson, 899 S.W.2d at 626; State v. Matthews, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1990); Aucoin, 756 S.W.2d at 715; State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988); State v. Brock, 678 S.W.2d 486, 490 (Tenn. Crim. App. 1984).

The defendant in this case has, however, preserved her Rule 403 objection for our review.  Evidence Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  As noted by the authors of Tennessee Law of Evidence, "The heart of Rule 403 is its balancing test."  Neil P. Cohen *et al.*, Tennessee Law of Evidence § 403.3, at 151 (3d ed. 1995).  The balancing test articulated in the rule favors admission of evidence, already determined to be relevant.  Id.

We review the trial court's ruling, which admitted the challenged evidence in this case, for abuse of discretion.  See, e.g., State v. Burns, 979 S.W.2d 276, 294-95 (Tenn. 1998) (balancing test is committed to the sound discretion of the trial court; its decision will not be disturbed on appeal absent a showing of clear abuse of discretion); State v. Stephenson, 878 S.W.2d

-10-

530, 542 (Tenn. 1994); State v. Roberson, 988 S.W.2d 690, 695 (Tenn. Crim. App. 1998). No such showing has been made here.

The gist of the challenged evidence is that the defendant, at first indirectly and then explicitly, sexually propositioned the arresting officer in an attempt to gain her freedom. The trial court carefully considered the import of this evidence. The trial court acknowledged that the evidence was prejudicial, but it also found that the evidence had great probative value going to consciousness of guilt and to the defendant's intoxication. We agree with the trial court that, in effect, the defendant attempted to bribe the officer. We also have no quarrel with the trial court's reasoning that individuals who are intoxicated sometimes make nonsensical statements or say things that a person with a clear mind and who is in control of her faculties would not say.

We are reinforced in our conclusion by the supreme court's recognition that circumstances surrounding a defendant's arrest are "peculiarly relevant." Marable v. State, 313 S.W.2d 451, 459 (Tenn. 1958).

> The actions and behavior of accused when charged with the crime, or when confronted with the consequences . . . are peculiarly relevant. In receiving evidence of this kind, it is not easy, if at all possible, for courts to draw any line segregating those acts which to some minds may seen significant of guilt from those which are irrelevant because justifying no such inference. Any ex post facto indication by accused of a desire to evade prosecution may be shown as one of series of circumstances from which guilt may be inferred.

Id.; see also State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985) (defendant rammed police car and opened fire on officers; his conduct at the time of capture provided relevant circumstances from which jury could infer guilt); State v. Matthew Douglas Cox, No. E1999-00351-CCA-R3-CD, slip op. at 19 (Tenn. Crim. App., Knoxville, Oct. 20, 2000) (applying Marable and concluding that trial court did not abuse its discretion in admitting testimony concerning circumstances of defendant's arrest); State v. Braggs, 604 S.W.2d 883, 886 (Tenn. Crim. App. 1980) (defendant's attempt to hide in basement to avoid arrest was relevant to show consciousness of guilt).

Under the circumstances in this case, we are unable to conclude that the trial court abused its discretion in allowing this evidence to be admitted.

### III. Prosecutorial Misconduct

In her next issue, the defendant complains that the state engaged in improper closing argument, which amounted to prosecutorial misconduct. The state led off its closing with the first complained-of argument.

> Thank you, Your Honor. May it please the Court and ladies and gentlemen of the jury. I suggest to you, ladies and gentlemen,

-11-

> that what Mr. Lee said regarding Defendant's state and all this she
> was ill and hormone malarkey, besides being offensive, is malarkey.

The defendant characterizes this argument as intemperate and improper.

The second complained-of argument occurred during the state's rebuttal closing.

> The testimony that they give, the State – the facts that come
> from her husband are just as unreasonable, just as improbable. For
> instance, the business about spilling the drink. First of all, the time
> isn't right. If somebody mixes some alcohol and some Coke and
> spills it on you and then an hour later, I submit you're probably not
> going to – if you smell like anything, you're going to smell like Coke.
> Secondly, you're probably not going to smell like anything.

The defendant alleges that no evidence supported this argument and that it violated due process.

It is appropriate to note at the outset that the defendant did not contemporaneously object to any of the comments of which she now complains, although she did raise the issue in her motion for new trial. The defendant's failure to object would ordinarily constitute waiver of the issue. See Tenn. R. App. P. 36(a); State v. Hall, 8 S.W.3d 593, 603 (Tenn. 1999); State v. Thornton, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999). In the interest of justice, however, we will consider the issue.

The question here is whether the prosecutor's arguments amounted to prosecutorial misconduct. To prevail on such a claim, the defendant must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to her or his detriment. See Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965); State v. Gray, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997). On appellate review, the court should "consider several factors including the intent of the prosecutor, the curative measures which were undertaken by the court, the improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case." Gray, 960 S.W.2d at 609; see also Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). In addition, we must keep in mind that closing argument is subject to the trial court's discretionary control. See State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999).

As a general proposition, closing argument must be temperate, predicated upon evidence introduced during the trial, and pertinent to the issues on trial. See State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). The state is more limited in its prerogative due to the prosecutor's role as a seeker of justice, rather than a mere advocate. See Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995).

We have carefully studied the comments made by the prosecution. The tone of the prosecutor's overall argument was that of commending the evidence to the jury and that the jury

should make its own decision as the trier of fact about the credibility of the testimony of the defendant's husband. The credibility of the husband was an important issue about which the state deserved the ability to comment upon within bounds. The "malarkey" remark strikes us as sarcastic, but oratorical emphasis can include the use of sarcasm to make a relevant point. See State v. Fredrick Sledge, No. 02C01-9405-CR-00089, slip op. at 48 (Tenn. Crim. App., Jackson, Nov. 25, 1997), aff'd other grounds, --- S.W.3d ---, No. W1994-00005-SC-R11-DD (Tenn., Mar. 20, 2000). Additionally, the comment about how a person would smell after having a drink spilled on her was nothing more than argument that the jury should consider the husband's testimony in light of human experience and common sense; such argument is not improper. See generally State v. Brown, 795 S.W.2d 689, 696 (Tenn. Crim. App. 1990) (upholding as proper a prosecutor's closing argument that "the jury should consider the evidence in light of human experience and common sense").

Consequently, we fail to see any misconduct with respect to these portions of the state's closing argument.

## IV. Reckless Driving

The defendant's grievance that it was error not to charge the jury with the lesser offense of reckless driving need not detain us long. Nothing in the record suggests that the defendant requested jury instructions on lesser-included offenses for driving under the influence. We recognize that Code section 40-18-110(a) places an affirmative duty on a trial court regardless whether the defendant has made the request, Tenn. Code Ann. § 40-18-110(a) (1997); nevertheless, Rule 3 of the Tennessee Rules of Appellate Procedure still applies and is specific that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived," Tenn. R. App. P. 3(e). The defendant in this case failed to include this issue in her new trial motion, although she has raised it on appeal.

Moreover, plain error does not avail the defendant on this issue. Reckless driving is not, at any rate, a lesser-included offense of driving under the influence.[2] See State v. Burns, 6

---

[2] In State v. Burns, the supreme court adopted, insofar as it is relevant here, the following test for determining what constitutes a lesser-included offense:

An offense is a lesser-included offense if:

(a)     all of its statutory elements are included within the statutory elements of the offense charged; or

(b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

    (1)     a different mental state indicating a lesser kind of culpability; and/or

    (2)     a less serious harm or risk of harm to the same person, property or public interest; . . . .

(continued...)

S.W.3d 453 (Tenn. 1999); see also, State v. Lawrence, 995 S.W.2d 142, 145 (Tenn. Crim. App. 1998); Fournier v. State, 945 S.W.2d 766, 769 (Tenn. Crim. App. 1996); Ray v. State, 563 S.W.2d 218, 219 (Tenn. Crim. App. 1977). Consequently, it was not error, plain or otherwise, to fail to instruct on reckless driving in this case.

## V. Sentencing

In the defendant's final issue, she proposes that she should have been sentenced to minimum fines and time. According to the defendant, she had no prior criminal history, had physical and mental problems, and was capable of rehabilitation, thereby creating the presumption that she was a logical candidate for probation. She further offers, in conclusory fashion, that she was an especially mitigated offender, and for that reason she should have been sentenced to minimum fines and time served.

The defendant does not specify what she means by being sentenced to "minimum time." In light of the mandatory minimum 48 hours of confinement for first offense DUI, the defendant is not eligible for a completely probated sentence. We interpret the complaint, therefore, to stem from the trial court's order that she is to serve eight days incarcerated before being released to serve the balance of her sentence of eleven months, 29 days on supervised probation.

The trial court sentenced the defendant immediately following the jury's verdict. The trial court noted that the degree of the defendant's intoxication and the defendant's attempt to influence the officer were the two considerations that justified more than the mandatory minimum 48 hours confinement.

In felony sentencing, the trial court has an affirmative duty to state in the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp.1998); State v.

---

[2](...continued)
State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).

In 1997 the offense of DUI required (a) any person to drive or be in physical control of a vehicle; (b) on any public road, highway, street, or alley, or on the premises of any shopping center, trailer park, apartment complex, or other place generally frequented by the public at large; (c) while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system. Tenn. Code Ann. § 55-10-401 (1997 Supp.). The offense of reckless driving required (a) any person to drive any vehicle; (b) in willful or wanton disregard for the safety of persons or property. Tenn. Code Ann. § 55-10-205 (1993).

DUI lacks the element of willful and wanton disregard for safety, while reckless driving lacks the element of being under the influence of an intoxicant. Part (a) of the Burns test, therefore, is not satisfied. Nor is part (b) of the Burns test applicable. The reckless driving mental state of "willful" or "wanton" does not indicate a lesser kind of culpability, and the elements of reckless driving do not establish a less serious harm or risk of harm.

Troutman, 979 S.W.2d 271, 274 (Tenn. 1998); State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). By contrast, the misdemeanor sentencing statute does not require explicit findings; it specifies only that the trial court "consider" the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d) (1997); Troutman, 979 S.W.2d at 274; Russell, 10 S.W.3d at 278. The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. Additionally, the misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

For misdemeanor sentencing, the trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn Code Ann. § 40-35-302(e) (1997). In determining whether to grant probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record and potential for rehabilitation, the defendant's background and social history, present condition, including physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. See, e.g., Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974); State v. Dykes, 803 S.W.2d 250, 259-60 (Tenn. Crim. App. 1990); State v. Tidwell, No. 0C01-9807-CC-00288, slip op. at 3 (Tenn. Crim. App., Nashville, Jun. 30, 1999), perm. app. denied (Tenn. Jan. 3, 2000).

As indicated, a trial court is not required to make explicit findings in misdemeanor cases. This is not to say that a trial court has unbridled discretion in misdemeanor sentencing. In this case, the trial court -- although not obliged to do so -- gave two reasons why it was ordering the defendant to serve more than the 48-hour minimum period of incarceration. We have examined those reasons.

The first reason cited by the trial court was the defendant's degree of intoxication. Degree of intoxication goes to the nature and circumstances of the offense, and it may be legitimate and influential consideration regarding probation. The problem in this case, however, is that while the evidence was clearly sufficient to support the conviction for driving under the influence, the *degree* of the defendant's intoxication cannot be determined from the record. Consequently, under the facts of this case (or the lack thereof) the trial court erred in relying on this reason.

The second reason that the trial court mentioned was the defendant's attempt to influence the officer; we assume that the trial court was referring to the sexual proposition that the defendant made to the arresting officer. The defendant's attempt to corrupt the criminal justice system is certainly worthy of consideration. Just as a defendant's truthfulness at a trial or sentencing is a factor that may be considered, see Dykes, 803 S.W.2d at 259, the defendant's behavior in this case demeans the process of justice that we rely on to safeguard our rights and privileges. The defendant's behavior was a circumstance of the offense which warrants the trial court's concern.

On balance, we are not persuaded that the trial court exceeded the "wide latitude of flexibility," Creasy, 885 S.W.2d at 832, that is afforded in the misdemeanor arena, and we will not disturb the order requiring a short term of confinement.

Before leaving this subject, however, we must correct a matter concerning the judgment form. The judgment form is blank as to the percentage of the sentence, which the defendant shall serve and after which the defendant is eligible for work release, furlough, trusty status, and related rehabilitative programs. See Tenn. Code Ann. § 40-35-302(d) (1997). The trial court mentioned thirty percent (30%) when it sentenced the defendant following the jury's verdict. Through some oversight, that percentage figure did not find its way onto the judgment form. The judgment is hereby amended to show that the defendant shall serve 30 percent of her sentence before she is eligible for available rehabilitative programs. The defendant, therefore, is sentenced to eleven months, 29 days. She is eligible for available rehabilitative programs after serving 30 percent of her sentence. The defendant is ordered to serve eight days of her sentence in confinement, after which she shall be placed on supervised probation for the balance of her sentence.

We now come to the last sentencing issue: the maximum $1,500 fine which was assessed by the jury and then imposed without further comment by the trial court. In State v. Bryant, 805 S.W.2d 762, 766-67 (Tenn. 1991), the supreme court held that the constitution did not prohibit appellate review of fines. See Tenn. Const. art. VI, § 14. Fines are generally assessed by the jury unless the defendant waives this constitutional protection. Tenn. Code Ann. § 40-35-301 (1997); State v. Mahoney, 874 S.W.2d 627, 630 (Tenn. Crim. App. 1993).

"Although the jury is to 'fix' the amount of the fine and report it with a guilty verdict, it is the trial court that is obligated to impose a fine, if any – not to exceed that fixed by the jury – as part of the sentence." State v. Blevins, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997); see Tenn. Code Ann. § 40-35-301(b) (1997). The trial court's imposition of a fine is to be guided by the factors of the 1989 Sentencing Act, including "'the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence.'" State v. Lewis, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997) (quoting State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993)). A trial court, in other words, may not abdicate its judicial responsibility for imposing a fine by parroting whatever fine is fixed by the jury. See Blevins, 968 S.W.2d at 895.

A defendant's ability to pay is usually a factor in the establishment of fines, albeit not automatically "the" controlling factor. Tenn. Code Ann. § 40-35-207(a)(7) (1997); see State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (a defendant's ability to pay "is not necessarily a controlling [factor]"). When, as in this case, the trial court fails to set forth any findings of fact concerning the defendant's ability to pay a fine, our review is de novo without a presumption of correctness. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Lewis, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997) (no findings by trial court regarding fine imposed for misdemeanor, simple possession of marijuana conviction); State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (no findings by trial court regarding fine imposed for felony convictions).

The trial court in this case failed to articulate the basis for imposing the maximum fine, which was the amount set by the jury. The defendant, though, did not request any special finding by the trial court; nor did she offer any relevant evidence demonstrating why the fine was excessive. When the defendant filed her new trial motion, she raised a point that the fine was excessive, but again no specifics and no relevant evidence of excessiveness were offered. We also can find no evidence that the defendant ever filed with the trial court a Rule 35, Tenn. R. Crim. P. 35, motion for reduction of the fine portion of the sentence. We simply have no evidence before us in the record establishing why the fine is excessive, and it is the defendant's burden on appeal to make that showing. She has not done so, and we affirm the trial court's acceptance of the fine recommended by the jury. See Alvarado, 961 S.W.2d at 153 (defendant has burden on appeal).

## VI. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed. The trial court's judgment shall be modified to reflect the percentage of service required for this misdemeanor sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE