# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 22, 2007 Session

## STATE OF TENNESSEE V. MARK DEWAYNE CULBERTSON

**Direct Appeal from the Circuit Court for Sevier County**
**No. 9589-II     Rex Henry Ogle, Judge**

_____

**No. E2006-01572-CCA-R3-CD** - Filed January 7, 2008

_____

A Sevier County jury convicted the Defendant, Mark Dewayne Culbertson, of possession of a controlled substance in a penal institution, a class C felony. The trial court sentenced the Defendant, a Range II offender, to eight years and six months in prison. On appeal, the Defendant contends that the trial court erred when it: (1) denied his motion to suppress his statement; (2) denied his motion for judgment of acquittal; (3) denied his motion for a new trial because he was not notified pretrial that the controlled substance was destroyed during testing; (4) denied his motion for new trial based upon prosecutorial misconduct; (5) failed to order a new trial because of newly discovered evidence; and (6) improperly sentenced the Defendant. Finding that there exists no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Robert L. Vogel, Knoxville, Tennessee (on appeal) and James Greenlee, Sevierville, Tennessee (at trial) for the Appellant, Mark Culbertson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; Al Schmutzer, District Attorney General; Jeremy Ball, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Trial

The Sevier County Grand Jury indicted the Defendant on one count of possession of a controlled substance in a penal institution. At the Defendant's trial on this charge, the following

evidence was presented: Brian Smith, a corrections officer at the Sevier County Jail, testified that, on November 26, 2002, he searched the Defendant before admitting him into jail. When the Defendant entered the jail, Officer Smith asked the Defendant to place everything that he had on his person on the counter so that he could log it into the jail's property files. Officer Smith specifically asked the Defendant if the Defendant possessed any needles, drugs, or tobacco, and the Defendant responded negatively. Officer Smith patted down the Defendant and did not find anything. He then asked the Defendant to have a seat and to remove his shoes. In the Defendant's right shoe, the officer found a plastic bag containing a white substance. The officer described the shoes as similar to tennis shoes. The Defendant asked the officer if the officer was going to "charge him with it," and the officer said that decision was not his.

Officer Smith took the Defendant to Sergeant Mays, who said the substance must be sent to the crime laboratory for testing. The officer then brought the Defendant to a detective at the Sheriff's Office. Officer Smith testified that the Defendant became upset after Sergeant Mays decided that the officer should contact the detectives at the Sheriff's Office. The Defendant made statements that the officers did not have to contact detectives and "things of that nature."

On cross-examination, the Officer Smith testified that he described this event in an incident report. Officer Smith said there was no possibility the Defendant's shoes were boots. He agreed that immediately after he found the substance he went to his sergeant because Officer Smith could not identify the substance. The officer and the sergeant returned to the Defendant shortly thereafter to "see if he would acknowledge what the substance was." The officers did not offer the Defendant *Miranda* warnings but still asked him about the substance. The Defendant asked the officers "not to charge him for it." The officer said that "the first time" the Defendant asked that he not be charged was in response to this inquiry.

Jeff McCarter, a detective with the Sevier County Sheriff's Department, testified that on November 26, 2002, Officer Smith came to his office because the officer confiscated some contraband from a man he booked into jail. The detective sent the substance to the Tennessee Bureau of Investigations ("TBI") crime laboratory for examination.

Jacob White, a special agent with the TBI, testified that he analyzed the substance found in this case and determined that the substance contained psilocin, a hallucinogenic substance contained in some varieties of mushrooms. He said that psilocin is a controlled substance in Tennessee. Agent White determined that the substance weighted 0.6 grams. On cross-examination, the agent testified that the substance was consumed by the analysis, meaning that the entire sample was necessary to make an identification of the controlled substance contained in the material. The agent described the substance as "porous" and said the sample was roughly the size of a half dollar.

For the Defendant, Thomas Carr testified that he used to live with the Defendant in Gatlinburg. When they moved into the apartment, there was a pair of boots Carr described as steel-toed, brown, and above the ankle. He said that he let the Defendant wear those boots in November of 2003. On cross-examination, Carr testified that he knew the Defendant because he and the Defendant both worked for John Tate's construction company. Carr explained that the

boots were size 10 or 10½ and that he never saw the Defendant wearing them.

John Tate testified that he knew the Defendant because his cabin rental company previously employed the Defendant as a maintenance man. Tate testified the Defendant was working for him the day that he was arrested. He noticed that the Defendant wore dark-colored, steel-toed boots. The Defendant had previously told Tate that the boots had been left at Carr's cabin. Tate testified he trusted the Defendant with the keys to approximately 120 cabins, and he never suffered a loss as a result of the Defendant having those keys. Tate described the Defendant as having a reputation in the community for honesty.

On cross-examination, Tate recalled the Defendant was arrested in November 2002, shortly before Thanksgiving. Tate knew of the Defendant's previous convictions and that he served time in jail, but he did not know of the Defendant's specific convictions for class C felony theft, class D felony theft, two counts of class E felony theft, aggravated burglary, and misdemeanor theft. Tate said he felt the Defendant was honest from working with him, but he agreed he did not take into account his previous convictions.

The Defendant testified that, the day he was arrested, he was wearing a pair of boots that he borrowed from his roommate, Carr. He said that the officer pulled out the insoles of his boots and found "some substance" in a clear little baggie. The jailer asked him what the substance was, and the Defendant said, "I don't know . . . . I've never seen it before." The Defendant denied telling the jailer that the jailer did not have to "charge [him]." The Defendant said he was not given a chance to explain that the boots were not his, and he did not knowingly put the substance in his boot.

On cross-examination, the Defendant said that the jailer took the boots from him after intake because "you are not allowed to wear steel-toed boots" in the jail, and he did not receive the boots back until he left the jail. Further, he said he did not own a pair of Airwalk tennis shoes, but he had a pair of Nike tennis shoes. The Defendant conceded he had previous convictions, and the State went through each of those convictions. The Defendant clarified that he usually wore tennis shoes to work and only wore boots the day he was arrested because he was pressure washing and needed boots.

Based upon this evidence, the jury convicted the Defendant of introducing a controlled substance into a penal institution.

## B. Sentencing Hearing

At the sentencing hearing, the State presented evidence that the Defendant had several felony convictions. On February 1, 1994, the Defendant pled guilty to two counts of felony theft and two counts of aggravated burglary. He was convicted of aggravated burglary in 1995 and of felony reckless endangerment on April 28, 1997. Further, the Defendant had been convicted of several misdemeanors, for a total of fourteen prior convictions. The State argued that the trial court should sentence the Defendant, a Range II offender, to the top of the six to ten year applicable range. The Defendant testified that he has tried to be a good citizen since he got out

of prison, and he did not intend to introduce contraband into the jail. The Defendant agreed he had several parole and probation violations but stated that those violations were for not paying all of his fines.

The trial court found that there were no applicable mitigating factors and that two enhancement factors applied: that the Defendant had an extensive criminal history; and that he had previously failed to comply with the terms of probation. Based upon this evidence, the trial court sentenced the Defendant as a Range II offender to eight and a half years in prison.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it: (1) denied his motion to suppress his statement; (2) denied his motion for judgment of acquittal; (3) denied his motion for a new trial because he was not notified pretrial that the controlled substance was destroyed during testing; (4) denied his motion for new trial based upon prosecutorial misconduct; (5) failed to order a new trial because of newly discovered evidence; and (6) improperly sentenced the Defendant.

### A. Motion to Suppress

The Defendant contends that the trial court erred when it admitted the Defendant's statement into evidence. He asserts that for *Miranda* purposes, he gave this statement while in custody, and that his statement was the result of an illegal interrogation and not voluntarily given. The State counters that the Defendant was in jail being booked on unrelated charges and that he was not in custody for *Miranda* purposes.

At trial, the officer first testified that immediately after he found the substance in the Defendant's shoe, the Defendant told the officer that the officer did not have to charge him with "it." On cross-examination, the officer testified differently, stating that immediately after he found the substance he went to his sergeant because he could not identify the substance. The officer and the sergeant returned to the Defendant shortly thereafter to "see if he would acknowledge what the substance was." They did not give the Defendant *Miranda* warnings, but they asked him about the substance. The Defendant responded by asking the officers "not to charge him for it." The officer said that "the first time" the Defendant asked that he not be charged was in response to this inquiry. The Defendant's attorney requested a side bar with the trial court during which he asserted that the statement was inadmissible because the Defendant had not been given his *Miranda* warnings. The trial court disagreed, finding that the officer had previously testified that the Defendant spontaneously made the statement and that it was, therefore, an issue that affected the officer's credibility. At the hearing on the Defendant's motion for new trial, the trial court stated:

> The statement of [the Defendant] to the officer at the jail, I am satisfied in my mind that he made it, that he knew it was there, I am satisfied of that. I was [here] the day of the trial and as I say, I wouldn't believe him on a stack of Bibles as high as this courthouse. But whether a jury does or not, again, that's up for

them to decide.

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, article I, section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. The United States Supreme Court has held that the protections afforded by the Fifth Amendment require that precautions be taken before statements obtained through custodial interrogation are allowed as evidence against an accused. *Miranda v. Arizona*, 384 U.S. 436, 479 (1964). Generally, when statements made by an accused are the product of a custodial interrogation by law enforcement officers, the statements may not be admitted into evidence unless the accused is:

> Warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* Only when the suspect is informed of his rights via the *Miranda* warnings may a suspect be deemed to knowingly and intelligently waive the right to remain silent and the right to an attorney. *Id.* Moreover, any statement obtained after a waiver of this right must be voluntary and not be extracted by "any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897).

The protections provided under *Miranda* do not apply in every instance where a police officer questions a suspect; rather, these protections only apply "when the defendant is in custody and is subjected to questioning or its functional equivalent." *Walton*, 41 S.W.3d at 82. *Miranda* warnings are required only when a person is subject to custodial interrogation by law enforcement. "Custodial" means that the subject of questioning is in "custody or otherwise deprived of his freedom by the authorities in any significant way." *Miranda* 384 U.S. at 479. "Interrogation" has been interpreted to refer to questions that law enforcement officers should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). In order for *Miranda* to apply, the suspect's statements must be in response to interrogation by law enforcement personnel, *State v. Brown*, 664 S.W.2d 318, 321 (Tenn. Crim. App. 1983), or the suspect must know that he is being interrogated by an agent of the State. *Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990). "Absent either one of these prerequisites, the requirements of *Miranda* are not implicated." *Id.* For instance, on-the-scene questioning does not require *Miranda* warnings. *Miranda*, 384 U.S. at 477; *State v. Goss*, 995 S.W.2d 617, 629 (Tenn. Crim. App. 1998).[1]

---
[1]

In *Miranda*, the Supreme court stated:

When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of

The *Miranda* standards are modified, however, when the suspect subjected to questioning is already in custody because he is incarcerated. In Tennessee, the standard to determine whether *Miranda* warnings must precede questioning in a prison setting were set out in *State v. Goss*. 995 S.W.2d at 629. In *Goss*, this Court held that a prisoner is not automatically "in custody" within the meaning of *Miranda*; there must be an additional imposition on the inmate's freedom of movement. *Id.* Relevant to this determination is (1) the language used to summon the inmate, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure exerted to detain the inmate. *Id.* These factors are also the appropriate consideration when determining whether a defendant, who is being booked into jail on an unrelated charge, is "in custody" for purposes of *Miranda* when the defendant gives statements relevant to another offense.

In the case under submission, if the Defendant's statement was made spontaneously and immediately after the jailer found the substance, the statement is clearly admissible. Under those circumstances, it would not be the result of any question, i.e., interrogation, at all. The closer question occurs if the statement was made in response to the jailer's inquiry of the nature of the substance. Even in that scenario, though, we conclude that the statement is admissible. The mushroom substance was uncovered in the course of a routine search, and the jailer was unsure of the substance's nature, which, as a mushroom, was not readily apparent. The jailer went to his supervisor to see if the supervisor could identify the substance and determine whether it was contraband. The supervisor, also unsure of the nature of the substance, asked the Defendant what the substance was. This questioning took place in the same jail intake area where the Defendant was being booked on unrelated charges. Under these circumstances, we conclude that this question occurred during the fact finding process when the officers were attempting to determine whether the substance was contraband. As such, this question amounted to an on-the-scene, investigatory question. "'Responses to general on-the-scene questioning by an officer during the fact finding process as facts surrounding the crime are admissible evidence.'" *Goss*, 995 S.W.2d at 629 (quoting *State v. Johnson*, 685 SW.2d 301, 306 (Tenn. Crim. App. 1984)). We hold that the trial court properly admitted this statement.

## B. Motion for Judgment of Acquittal

The Defendant contends that the trial court erred when it denied his motion for judgment of acquittal and that the evidence is insufficient to sustain his conviction. He asserts that, because his statement was inadmissible and could not properly be considered by the jury, the State did not prove the elements of the crime. The Defendant asserts that the officer contradicted himself and "admission of the [Defendant's] statement violated the substantial rights of the [D]efendant." Finally, he asserts that the State did not prove that he acted knowingly as is required for this offense.

responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

*Id.* at 477-78.

We apply the same standard when reviewing whether a trial court erred in denying a motion for judgment of acquittal as when reviewing whether the evidence was sufficient to sustain a conviction. *See State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden

of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In order to sustain a conviction for introducing contraband into a penal institution, the State must prove that the defendant, knowingly and with unlawful intent, did take, send or otherwise cause contraband, such as a controlled substance, to be taken into a penal institution where prisoners are quartered or are under custodial supervision. *See* T.C.A. § 39-16-201(a)(1) (2006).

We conclude that the evidence, viewed in the light most favorable to the State, is sufficient to sustain the Defendant's conviction, and the trial court, therefore, did not err when it denied the Defendant's motion for judgment of acquittal. The Defendant was arrested on an unrelated matter and transported to the jail. Per jail intake procedures, the jailer asked the Defendant if the Defendant had any contraband on his person, and the Defendant responded negatively. The jailer then searched the Defendant, finding an illegal substance located in his shoe. The Defendant stated that the jailer did not have to charge him for having the substance. At trial, the Defendant contended that the boots were borrowed, and he had no knowledge that the mushroom was located in the boot. The jury discredited this testimony, and the trial court also found the Defendant not credible. We conclude that a rational trier of fact could have found the essential elements of this crime beyond a reasonable doubt. Accordingly, the Defendant is not entitled to relief on this issue.

### C. Testing of the Evidence

The Defendant next contends that the State's failure to disclose the "forensic interview summary," which included information that the recovered substance was destroyed during testing, violated Rule 16 of the Tennessee Rules of Criminal Procedure. The Defendant asserts that the State, on direct examination of the TBI forensic agent, offered into evidence a bag that purportedly contained the contraband substance. Then, on cross-examination, the agent admitted that the bag was empty because all of the substance was consumed during testing. The Defendant asserts that the fact that all of the substance had been destroyed should have been disclosed to him prior to trial. He asserts this prejudiced him because, had he been properly notified, he could have asked that his own expert either participate in or be permitted to observe the testing.

Tennessee Rule of Criminal Procedure 16 describes the procedure for the State's disclosure of evidence:

**(a) Disclosure of Evidence by the State.**

(1) *Information Subject to Disclosure.*

. . . .

(F) Documents and Objects. Upon a defendant's request, the state

-8-

shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:

>  (i) the item is material to preparing the defense;
>  (ii) the government intends to use the item in its case-in-chief at trial; or
>  (iii) the item was obtained from or belongs to the defendant.

(G) Reports of Examinations and Tests. Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph the results or reports of physical or mental examinations, and of scientific tests or experiments if:

>  (i) the item is within the state's possession, custody, or control;
>  (ii) the district attorney general knows--or through due diligence could know-- that the item exists; and
>  (iii) the item is material to preparing the defense or the state intends to use the item in its case-in-chief at trial.

To enforce the rule, Rule 16(d)(2), provides that if there has been noncompliance, the trial court may order the offending party to permit the discovery or inspection, grant a continuance, prohibit the introduction of the evidence not disclosed or enter such other order as the court deems just under the circumstances. *See State v. Leon Goins*, No. W1999-01681-CCA-R3-CD, 1999 WL 1531111, at *2 (Tenn. Crim. App., at Jackson, Dec. 27, 1999), *perm. app. denied* (Tenn. July 17, 2000). "Thus, it is clear that the court has wide discretion to fashion a remedy that is appropriate for the circumstances of each case and the sanction must fit the circumstances of that case." *Id.* (citations omitted); *see State v.James*, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984). Whether a defendant has been prejudiced by the State's failure to disclose information is a significant factor in determining an appropriate remedy. *State v. Smith*, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995). The Defendant bears the burden of showing "the degree to which the impediments to discovery hindered trial preparation and defense at trial." *State v. Brown*, 836 S.W.2d 557, 560 (Tenn. 1993).

In the case under submission, our first inquiry is whether the State violated Tennessee Rule of Criminal Procedure 16. The technical record does not contain a Rule 16 motion for discovery filed by the Defendant, and the record does not reflect that the trial court ruled upon a motion for discovery. It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). When the record is incomplete and does not contain information relevant to a particular issue, this Court may not make a ruling. *State v. Gibson*, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987). In the absence of an adequate

record, this Court must presume the correctness of the trial court's ruling. *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991). Appellate courts may only review what is in the record and not what might have been or should have been included. *Dearborne v. State*, 575 S.W.2d 259, 264 (Tenn. 1978).

It was only during the trial, when he learned that the substance had been consumed during testing, that the Defendant objected, arguing that the failure to disclose this consumption prejudiced him. The Defendant never sought to obtain the substance for testing before trial, nor did he seek to have an expert present when the substance was tested. The Defendant has not shown any prejudice. He is not entitled to relief on this issue.

## D. Alleged Prosecutorial Misconduct

The Defendant next contends that the State committed prosecutorial misconduct when it attempted to enter an empty evidence bag into evidence. In order to prevail on a claim of prosecutorial misconduct, the defendant must demonstrate that the conduct committed by the prosecution was so inflammatory or improper that it affected the verdict to his detriment. *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965); *State v. Gray,* 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997). In making this determination, this Court is guided by five factors:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984).

We conclude that the State's actions were not improper. It appears from the trial transcript that the State questioned the special agent about the testing of the substance. It also asked the agent about his procedures after testing the substance, and the agent responded that, after he finished his analysis, he resealed the bag and initialed the seal. The State then asked the agent to unseal the bag and verify that it contained the same substance he received. On cross-examination the agent testified that the bag was empty because the substance had been consumed during analysis. The Defendant made no objection. We conclude that the record does not show that the State acted improperly. It does not appear that the State attempted to hide from the Defendant the fact that the substance was consumed. The Defendant is not entitled to relief on this issue.

## E. Newly Discovered Evidence

The Defendant next contends that he should be granted a new trial because he provided the trial court with newly discovered evidence that another person claimed to have owned the boots and the illegal mushroom contained therein. At the motion for new trial hearing, Rocky Wolfenbarger testified that he was incarcerated in the Sevier County Jail. He said that he lived in the apartment before the Defendant, and he left in that apartment a pair of boots in which he stored an illegal mushroom. He said that he did not come forward before because he did not know that the Defendant was being prosecuted for this offense. Wolfenbarger then met the Defendant in jail and learned that he had been prosecuted for the mushroom in Wolfenbarger's boots. On cross-examination, Wolfenbarger testified he did not know the mushroom was in his boots, and he did not tell the Defendant that he hid the mushroom in the boot. He said that he could have hid the mushroom in the boot. The State then asked Wolfenbarger if "to [his] knowledge, [the Defendant asked people in jail] to come and testify for him, that it was in fact their mushroom." Wolfenbarger responded, "I'm, I'm not sure. Like I said, we w[ere] in there maybe three weeks together." Wolfenbarger then said that the Defendant asked one other person to testify that the mushroom belonged to them.

The trial court found:

> This Court, any time that you have a situation such as this, a Court has to look at it and to make the evaluation about the, certainly the due diligence aspect of it. That's probably been met. Although from the testimony of Mr. Wolfenbarger it's hard to say. It's hard to say.
>
> Certainly, based on his testimony that it was his [boot] would have corroborated the testimony of [the Defendant]. And I will be just extremely honest with you. I wouldn't believe [the Defendant] on a stack of Bibles as high as this courthouse. Because the truth I don't think is in him, he's a thief from head to toe, not worthy of belief on anything.
>
> I think he lied in front of the jury, they thought he lied. But that's not the issue this Court has to decide. This man has just, he's just got a record a mile long, a thief and a burglar.
>
> Now, looking at Mr. Wolfenbarger's testimony, depending on which version of his testimony here today a jury believed, it could support [the Defendant's] testimony.
>
> Quite candidly as it relates to myself, I think it's very dubious that Mr. Wolfenbarger walk in here after the Statute of Limitations has long long expired and at one point say it's his, at one point he says he doesn't know. At one point he says it could have been. Again, I wouldn't believe him, I wouldn't believe him at all.
>
> I tend to think this is contrive[d], not by the attorneys, but I tend to think that this has been a contrive[d story] by [the Defendant] and Mr. Wolfenbarger.

But on the other hand, just because I wouldn't believe him or [the Defendant] either one do[esn't] mean a jury wouldn't.

. . . .

Even if [the jury were to] believe the testimony on [Mr. Wolfenbarger's] Affidavit in 2003, that's six months after this even occurred. . . . Even if th[e jury] believe what he swor[e] to in this Affidavit he said on cross examination today that he was sure that that was the year, March of '03, through the latter part of '03, that he lived there. That was . . . several months after [the Defendant] was taken into jail and this event occurred.

So even taking the Affidavit as completely true, it is after this event even occurred.

The Defendant's attorney then told the trial court that the date on the affidavit was a mistake, and the correct date was before the events in this case occurred. The trial court then found:

This Court, because the Court has to pass upon the credibility of the testimony of Mr. Wolfenbarger, that is a crucial element of what the Court has to decide.

The Court quite candidly, as I said earlier, has great difficulty, and here all of a sudden a man who now faces no criminal responsibility, comes into this Court and says ultimately, I suppose, if you want to put it that way, that it was his mushroom.

In one sense, the issue of the ownership of the shoes is not that controlling. In fact, that was the defense, that [they were not] his shoes. The [D]efendant says because of that that he could not have been responsible.

The Court notes that the testimony in this case, this was not pow[d]er, this was not fragments of a mushroom, this was a mushroom.

Mr. Wolfenbarger stated that those had been his shoes. Well, he hadn't been in contact with them for a long time. The Court is troubled that during his testimony Mr. Wolfenbarger made basically three different statements, if you include the Affidavit he's made four different statements. The Affidavit itself was notarized by someone that didn't see the witness sign it.

This Court is of the opinion that based, and its basing its decision on the credibility of Mr. Wolfenbarger, that the Court does not believe Mr. Wolfenbarger's Affidavit because of the inconsistency of his testimony.

That the Court feels like that this is a sham that is attempted to be

-12-

perpetrated on the Court. Not by the attorneys, the Court is not accusing the attorneys of anything improper.

But the Court finds and so holds that based upon his testimony, the contradictions in his testimony and in his Affidavit that Mr. Wolfenbarger's testimony, to put it mildly, is skeptical, and that the Court must find in order to order a new trial that it in fact would have made a difference. That it might have made a difference is not the question.

To be entitled to a new trial on the basis of newly discovered evidence, a defendant must show: (1) that he or she used reasonable diligence in seeking the newly discovered evidence; (2) that the new evidence is material; and (3) that the new evidence will likely change the result of the trial. *See State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994). Whether to grant a new trial on the basis of newly discovered evidence lies within the sound discretion of the trial court. *See State v. Caldwell*, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). Accordingly, we review this issue for an abuse of discretion. *See State v. Meade*, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996).

In the case under submission, we conclude that the trial court did not abuse its discretion when it found that the Defendant was not entitled to a new trial because the newly discovered evidence would not likely change the result of the trial. As the trial court noted, Wolfenbarger's affidavit listed the incorrect date, stating that he rented the same apartment as the Defendant after these events. Further, the affidavit was not properly notarized. Again, as the trial court noted, Wolfenbarger's testimony at the hearing was inconsistent during direct and cross-examinations and it was inconsistent with his affidavit. Wolfenbarger claimed that the boots and the mushroom were his, then that the boots were his but the mushroom was not, and then that the boots were his so the mushroom in them must have been his. He maintained that he left his boots in the apartment. Both the jury and the trial court found that the Defendant was not credible. Under these circumstances, we agree with the trial court that the Defendant has not proven that Wolfenbarger's testimony would likely change the result of his trial. He is, therefore, not entitled to relief on this issue.

### F. Sentencing

Finally, the Defendant contends that the trial court erred when it sentenced him. The Defendant asserts that the trial court improperly used his prior convictions to enhance his sentence when those convictions were also used to establish him as a Range II offender. The Defendant also complains that the trial court did not create an adequate record because it failed to make findings of fact supporting his sentence.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-

401(d) (2003).[2] This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001); *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if the following are met: (1) the sentence complies with the purposes and principles of the Sentencing Act; and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *Arnett*, 49 S.W.3d at 257.

In conducting a de novo review of a sentence, we must consider the following: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (1997 & Supp. 2002); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).[3] The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing Comm'n Cmts. To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001).

In the case under submission, the trial court found when sentencing the Defendant, "based upon your long, extensive history, based upon the fact that you have . . . been revoked on probation or parole several times, the Court is going to give you 8½ years as a sentence in this

---

[2] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the Defendant's appeal.

[3] Effective June 7, 2005, Tennessee Code Annotated sections 40-35-114 and 40-35-210 were rewritten in their entirety. *See* Tenn. Pub. Acts, ch. 353, §§ 5, 6. These sections were replaced with language rendering the enhancement factors advisory only and abandoning a statutory minimum sentence. *See* T.C.A. §§ 40-35-114 (2005) ("[t]he court shall consider, but is not bound by, the following advisory factors in determining whether to enhance a defendant's sentence"); -35-210(c) ("In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines.").

case." This does not adequately show that the trial court properly considered all relevant sentencing principles. Accordingly we apply no presumption of correctness to the trial court's sentencing determinations. *See* T.C.A. § 40-35-401(d).

At the Defendant's sentencing hearing, the evidence showed that the Defendant had fourteen prior convictions, at least four of which were felony convictions. The Defendant admitted under oath that he had several parole violations. The Defendant did not offer proof of any mitigating factors. His attorney stated "his prior record, you know, certainly could justify maybe a one or two year enhancement" and then argued that the Defendant should not be given the maximum sentence.

The Defendant's conviction in this case is a class C felony. In order to be classified as a Range II, multiple offender, a defendant must have: (1) a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable . . . ." T.C.A. § 40-35-106(a)(1) (2003). The Defendant has been convicted of felony theft of property valued over $1,000, a class D felony, in 1994; aggravated burglary, a class C felony, in 1994; aggravated burglary, a class E felony, in 1995; and reckless endangerment, a class E felony, in 1997. Any two of these convictions are sufficient to establish the Defendant as a Range II offender, and he was, therefore, properly classified as a Range II, multiple offender. The applicable sentencing range for his conviction is six to ten years. *See* T.C.A. § 40-35-112.

The Defendant is a Range II offender based upon two of his four prior felony convictions. Further, he has ten other prior convictions, which makes applicable enhancement factor (2), that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See* T.C.A. § 40-35-114(2) (1997 & Supp. 2002). The State submitted copies of fourteen criminal convictions, which is sufficiently more than necessary to establish the Defendant as a Range II offender. We conclude that enhancement factor (2) justifies increasing the Defendant's sentence from six years to eight and one-half years. There are no applicable mitigating factors. As such, we agree with the trial court's sentencing of the Defendant to eight and one-half years. He is not entitled to relief on this issue.

### III. Conclusion

Because we conclude that the trial court committed no error in the judgment, and based on the foregoing reasoning and authority, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE